RECEIVED JXM
10/5/2023
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **James Chelmowski** <br><br> Plaintiff <br><br> v. <br><br> **National Archives and Records Administration ("NARA"),** <br><br> Defendant. | Case No. **23cv14577** <br> **Judge Nancy L. Maldonado** <br> **Magistrate Judge Jeffrey Cole** <br> **RANDOM** <br> **CAT 2** <br><br> ***COMPLAINT FOR DECLARATORY*** <br><br> ***AND*** <br><br> ***EMERGENCY INJUNCTIVE RELIEF*** |

# Table of Contents

I.     INTRODUCTION ................................................................................................ 1

II.    JURISDICTION AND VENUE ...................................................................... 3

III.   PARTIES ......................................................................................................... 4

IV.   STATUTORY BACKGROUND .................................................................... 4

NARA Mandatory Response or Request for Extension Under the Freedom of Information Act .................................................................................................... 4

The Privacy Act ..................................................................................................... 5

V.    STATEMENT OF FACTS ............................................................................. 6

A. Chelmowski's February 21, 2023 First-Party FOIA and Privacy Act Request .................... 6

A1. NARA Did Not Provide Any FOIA Response in Over 7 Months ...................................... 7

NARA Refuses to Comply With NARA Mandatory Duties if Request Cannot Be Completed in 30 Working Days ......................................................................... 7

NARA FOIA Requirements for Processing Requests First-In, First-Out Basis ..................... 9

Chelmowski Meets Requirements For Judicial Review Under the FOIA ............................. 9

A2. NARA Never Provided a Privacy Act Response in Over 7 Months ................................. 10

Chelmowski Meet Requirements For Judicial Review Under the Privacy Act ................... 10

B. Background of NARA Illegal Concealment in 2020 to 2023 ............................................. 11

C. Documented 2020 and 2021 FOIA Searches and NARA is Still Concealing All Responsive Records from these Completed Searches for 30 Plus Months .................................................... 12

NARA Searches in 2020 and 2021 Ordered by Susan Gillett ............................................. 12

NARA General Counsel Gary Stern Documented Involvement in Processing Chelmowski's December 2, 2020 Request ................................................................... 15

NARA General Counsel Gary Stern Responsibilities an Mandatory Duties ....................... 15

D. NARA Fraudulent October 28, 2021 FOIA Status Updates ............................................. 16

E. NARA Facts Comparing Susan Gillett's October 28, 2021 Status Update and Her Email Requesting Searches ................................................................................................ 18

a - NGC21-111 factual search completion date on or about December 30, 2020 – Status Update: The Estimated completion date is 17 months from November 1, 2021 .................. 18

b. NGC21-156 factual search completion date on or about April 5, 2021– Status Update: The Estimated Completion Date is 18 months from November 1, 2021. ............................. 19

c. NGC21-336 factual search completion date on or about April 5, 2021– Status Update: The Estimated Completion Date is 21 months from November 1, 2021. ............................. 20

d. NGC21-338 factual search completion date on or about April 7, 2021– Status Update: The Estimated Completion Date is 18 months from November 1, 2021. ............................. 21

F. NARA 2021 Annual Reports and Data Provides More Facts of NARA Illegal Denying Chelmowski's Rights For Multiple Years................................................................................. 22

G. NARA Illegal Concealment and Actions With Chelmowski Began in 2016....................... 25

    NARA Concealment of OGIS Corruption, Malfeasance, Etc. in 2016 ................................. 25

    NARA Illegal Concealment From Chelmowski's 2016 FOIA and District Court Subpoena27

    NARA Communications Admitting Refusal Comply to Chelmowski's 2016 FOIA Request and District Court Subpoena................................................................................................... 28

    NARA Aided and Abetted the FCC and AT&T ................................................................... 32

H. Chelmowski, the Public, and the Courts Have the Right to the Facts of the NARA Corruption, Malfeasance, Etc. ................................................................................................. 32

I. The US Supreme Court Rulings and Congress – the NARA MUST Be ACCOUNTABLE and NEED to Be CHECK AGAINST CORRUPTION .......................................................... 33

CAUSES OF ACTION ................................................................................................................ 33

PRAYER FOR RELIEF ............................................................................................................. 35

# I.   <u>INTRODUCTION</u>

1.       This is an action against the National Archive and Records Administration ("NARA") for violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a *as amended*. Under the judicial review provisions, the FOIA. P.A. and the Administrative Procedure Act ("A.P.A."), 5 U.S.C. §§ 701–706, pro se Plaintiff James Chelmowski ("Plaintiff" or "Chelmowski") seeks relief in this lawsuit for the FOIA and Privacy Act request submitted to NARA on February 21, 2023.

2.       The NARA has not provided a FOIA or Privacy Act response to this February 21, 2023 request in over seven (7) months.

3.       Chelmowski's February 21, 2023 request was for all the facts, documents, and communications on processing his October 16, 2020, to September 6, 2022 requests for records regarding himself.

4.       The NARA will not provide any FOIA response or FOIA responsive any of Chelmowski's first-party requests filed between October 15, 2020, to February 21, 2023, without him filing a lawsuit. The NARA FOIA Annual Reports provide facts of the NARA illegal concealment of Chelmowski's rights to NARA records regarding himself.

5.       Privacy Act Officer Joseph Scanlon's September 2, 2021 Privacy Act was supposed to provide Chelmowski's rights to all communications in processing his requests from 2016 to August 2021. He would only provide about 18 pages of carefully selected emails from December 2020 to August 2021. See Exhibit 1 for these emails and Exhibit 2 for his Privacy Act response.

6.       **These emails provided the facts that many of the NARA FOIA searches for Chelmowski's requests from October 16, 2020 to April 1, 2021 were already completed.**

These searches were within weeks or about a month after his requests. **<u>The NARA would not provide Chelmowski his rights to these 2020 and 2021 completed searches, or a FOIA response with the FOIA exemptions for withholding these records.</u>** See Exhibit 1 for these internal emails with search requests and the search completion dates.

7.     An example of proof of the NARA illegal concealment is that the NARA's March 26, 2021 email provides facts that the NARA completed an email search in or about April 5, 2021, for emails containing Chelmowski's name. See Exhibit 1 and the following NARA March 26, 2021 email providing facts of the NARA emails search to be completed by April 5, 2021.

 NATIONAL ARCHIVES

Susan Gillett <susan.gillett@nara.gov>

---

**FOIA NGC21-156 (Chelmowski)**

Susan Gillett <susan.gillett@nara.gov>                                          Fri, Mar 26, 2021 at 5:14 PM
To: eDiscovery Requests <ediscovery.requests@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>

Good afternoon,

NGC requests a search of all NARA emails from May 1, 2018 through March 26, 2021 that include the FOIA requester's name and given variations of the name. The search should cover the entire email including email body, heading, subject line, metadata, email attachments, etc.

The names to search are:

"James Chelmowski or James Chelmowsky or Chelmowsky or Chelmowski or Jim Chelmowski or Jim Chelmowsky"

Please make the ZL results available to Jeannette Wise, Joseph Scanlon, Jodi Foor, and Wanda Williams.

If possible, we would like the search completed by **April 5, 2021**.

Let me know if you have any questions or concerns, or will need more time.

Thank you for your assistance.

Sincerely,
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov

 NATIONAL ARCHIVES

2

8.      Why is the NARA concealing Chelmowski's rights to these emails containing Chelmowski name for over 2 ½ years after this search was completed on or about April 5, 2021?

9.      Why did the NARA not provide even their mandatory FOIA Determination letter with the FOIA exemptions for withholding all the NARA emails containing Chelmowski's name in full in over 2 ½ years?

10.     This February 21, 2023 request will provide Chelmowski, the Public, and the Courts with the facts on why the NARA will not provide Chelmowski's rights to records regarding himself in these completed searches in 2020 to 2021 in these emails and his rights to the documents in his requests filed from August 16, 2021, to September 6, 2022, without filing lawsuits.

11.     Chelmowski has the right to these NARA regarding no matter how much NARA's corruption, fraud, malfeasance, etc., the facts in these documents prove.

12.     Chelmowski will document NARA corruption and illegal actions in denying Chelmowski's rights to the responsive records from his first-party October 16, 2020, to September 6, 2022 requests and the NARA corruption beginning in 2016 in the Statement of Facts Section. Chelmowski will add sections after providing facts of Chelmowski's right to judicial review under both FOIA and Privacy Act.

## II.   <u>JURISDICTION AND VENUE</u>

13.     This Court has jurisdiction under 5 U.S.C. §552a(g)(3)(A) (Privacy Act),  5 U.S.C. § 552(a)(4)(B) (FOIA), 28 U.S.C. §§ 1331 (federal question), 1346 (the United States as defendant), 2201 (declaratory judgment), and 2202 (further relief).

14.     The venue is properly vested in this Court under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C §. 552a(g)(3)(A), and under 28 U.S.C. § 1391(e) because the United States is a defendant

and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## III.  <u>PARTIES</u>

15.     Plaintiff JAMES CHELMOWSKI is a United States citizen who resides in Cook County in the state of Illinois.

16.     Defendant NATIONAL ARCHIVES AND RECORDS ADMINISTRATION is an agency of the executive branch of the United States government subject to the FOIA, under 5 U.S.C. § 552(f); subject to the P.A., under 5 U.S.C. § 552a; and subject to the judicial review provisions of the A.P.A., 5 U.S.C. §§ 701– 702. NARA is in possession or control of federal records requested and sought by Chelmowski.

## IV.  <u>STATUTORY BACKGROUND</u>

### <u>NARA Mandatory Response or Request for Extension Under the Freedom of Information Act</u>

17.     The NARA previously complied with the NARA mandatory duties when the NARA could not provide a FOIA determination in 20 workdays or 30 workdays with "unusual circumstances. See the following requirements in FOIA law and regulations.

18.     **[W]ithin 20 working days (or 30 working days in "unusual circumstances"), an agency must process a FOIA request and make a "determination."** At that point, the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce. FOIA requires that the agency make the **records "promptly available," which depending on the circumstances typically would mean within days or a few weeks of a "determination," not months or years**. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). *CREW* 711 F.3d 180, 189 (2013). (emphasis added).

4

## **The Privacy Act**

19.     Pro Se Plaintiff's right to Access his FCC records pursuant to the Privacy Act, 5

U.S.C. §  552a(d)Access to Records. - Each agency that maintains a system of records shall - (1)

upon request by any individual to gain access to his record or to any information pertaining to

him which is contained in the system.

20.     This District Court may enjoin the agency from withholding the records and

order the production to the complainant of any agency records improperly withheld from him. In

such a case the court shall determine the matter de novo, and may examine the contents of any

agency records in camera to determine whether the records or any portion thereof may be

withheld under any of the exemptions set forth in subsection (k) of this section, and the burden is

on the agency to sustain its action. See 5 U.S.C, § 552a(g)(3)(A).

21.     This District may assess against the United States reasonable attorney fees,

damages, and other litigation costs reasonably incurred in any case under this paragraph in which

the complainant has substantially prevailed. See 5 U.S.C. § 552a(g)(3)(B).

22.     The NARA must provide both the FOIA and Privacy Act exemptions to

withhold any portion of a responsive record. See 5 U.S.C. 552a(t)(1) & (2).

> (1)Effect of Other Laws.—
> No agency shall rely on any exemption contained in section 552 of this title to withhold from
> an individual any record which is otherwise accessible to such individual under the
> provisions of this section.
> (2)No agency shall rely on any exemption in this section to withhold from an individual any
> record which is otherwise accessible to such individual under the provisions of section 552 of
> this title.

23.     This District Court may enjoin the agency from withholding the records and order

the production to the complainant of any agency records improperly withheld from him. In such a

case the court shall determine the matter de novo, and may examine the contents of any agency

records in camera to determine whether the records or any portion thereof may be withheld under any

of the exemptions set forth in subsection (k) of this section, and the burden is on the agency to

sustain its action. See 5 U.S.C. §552a(g)(3)(A).

# V.   STATEMENT OF FACTS

## A. Chelmowski's February 21, 2023 First-Party FOIA and Privacy Act Request

24.     On February 21, 2023, Chelmowski submitted a first-party FOIA and Privacy

Act request via FOIA.gov and emailed the request to the NARA FOIA office, the Privacy Act

office, and Joseph Scanlon FOIA and Privacy Act Officer. See Exhibit 3 request, Exhibit 4

FOIA.gov confirmation, and Exhibit 5 submission to NARA Privacy Act email.

25.     This February 21, 2023 first-party FOIA and Privacy Act request included the

following.

> This is a FOIA and Privacy Act request for records regarding the requester James
> Chelmowski.
>
> Provide all details of Everything done on these past-due Requests filed between October
> 16, 2020, and September 6, 2022, **including everything in the Privacy Act System of
> Records NARA-7 FOIA Requests Files** for these requests as of February 21, 2023.
> These responsive records will include everything in processing these requests including
> but limited to search requests, search details, search results, etc.
>
> Chelmowski should not have to file this FOIA request to obtain the status of his FOIA
> requests because the NARA FOIA Public Liaison Gary Stern will not comply with his
> mandatory duties  FCC General Counsel and FOIA Public Liaison Gary Stern will not
> provide his mandatory and my rights to the status of my past due FOIA requests over the
> last month. See the attached FOIA Public Liaison request.
>
> NARA Privacy Act Officer Joseph Scanlon must provide all records in the NARA
> Privacy Act System of Records as of February 21, 2023, within 10 working days which is
> March 3, 2023, for my following requests including but limited to all search requests, all
> search details, all search results, etc.
>
> 1) FOIA/PA submitted was on October 16, 2020, the NARA provided FOIA control
>    number NARA-NGC-2021-000046, and **the NARA provided a Privacy Act control
>    number NARA-NGC-2021-000071**.
> 2) FOIA submitted was on December 1, 2020, the NARA provided FOIA control
>    number NARA-NGC-2021-000212.

3) FOIA/PA submitted was on December 21, 2020, the NARA provided FOIA control number NARA-NGC-2021-000282, and the **NARA <u>never</u> provided a Privacy Act control number**.
4) FOIA/PA submitted was on January 18, 2021, the NARA provided FOIA control number NARA-NGC-2021-000369, and **the NARA <u>never</u> provided a Privacy Act control number.**
5) FOIA/PA submitted was on February 2, 2021, the NARA provided FOIA control number NARA-NGC-2021-000433, and **the NARA <u>never</u> provided a Privacy Act control number**.
…
13) FOIA/PA submitted was on August 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-001430, and **the <u>NARA provided a Privacy Act control number NARA-NGC-2021-001286</u>**.
14) FOIA submitted was on September 7, 2021, the NARA provided FOIA control number NARA-NGC-2021-001372.
15) FOIA/PA submitted was on June 7, 2022, the NARA provided FOIA control number NARA-NGC-2022-001280, and **the NARA <u>never</u> provided a Privacy Act control number.**
**16)** FOIA/PA submitted was on September 6, 2022, the NARA provided FOIA control number NARA-NGC-2022-001673, and **the NARA <u>never</u> provided a Privacy Act control number.**


## A1. NARA Did Not Provide Any FOIA Response in Over 7 Months

26.     The NARA did not provide any FOIA response/determination or request for extension for this February 21, 2023 request in over seven (7) months.

**<u>NARA Refuses to Comply With NARA Mandatory Duties if Request Cannot Be Completed in 30 Working Days</u>**

27.     The NARA ceased complying with the NARA requirements of even providing Chelmowski an exention letter with his right to modify the request after NARA Joseph Scanlon's October 8, 2020 Declaration was filed in District Court and Chelmowski's October 16, 2020 request included Chelmowski's rights for the supporting documents used in Mr. Scanlon Declaration.

28.     The NARA regulations have specific requirements for Complex requests that could not be completed by the FOIA Determination deadline. See How does NARA process my FOIA request?". See 36 C.F.R. § 1250.26 with emphasis added.

h) Complex processing schedule. **If NARA needs to extend the deadline for more than an additional 10 working days** due to the complexity of a request or as a result of unusual circumstances, **we ask if you wish to modify your request so that we can answer the request sooner**. If you do not wish to modify your request, **we work with you to arrange an alternative schedule for review and release**...

29.    For example, prior to the NARA needing to conceal from Chelmowski and Courts the documents used in Joesph Scanlon's October 8, 2020 Declaration, the NARA provided the NARA mandatory extension request pursuant 36 C.F.R. § 1250.26 & 5 U.S.C. 552(a)(6)(b)(iii)(II)&(III). See the following snapshot from NARA Susan Gillett's September 4, 2019 request for an extension and right to modify to speed up production for his August 8, 2019 request within the 30 working days deadline.



NATIONAL
ARCHIVES

**Sent via FOIAOnline**

September 4, 2019

James Chelmowski
6650 N. Northwest Hwy #300
Chicago, IL 60631

Re:  Freedom of Information Act Request NGC19-461

Dear Mr. Chelmowski,

We received your FOIA request, dated August 8, 2019, and assigned it an internal tracking number NGC19-461 in addition to your *FOIAOnline* tracking number NARA-NGC-2019-000705. In your request, you are seeking:

*All the Office of Government Information Services (OGIS) requests and the OGIS determinations (if any) for OGIS requests from January 1, 2018 to August 8, 2019 pursuant to the Office of Government Information Services (OGIS) Standard Operating Procedures and Federal laws including but not limited to Freedom of Information Act and Administrative Dispute Resolution Act.*

8

Your request falls within the "unusual circumstances" categories contemplated by the FOIA, 5 U.S.C. § 552 (a) (6) (B) (iii) (II) and (III), and we need additional time to respond to your request beyond the twenty business days provided by the FOIA statute. The records you seek necessitate consultation with another component of the agency having a subject matter interest therein. Your request may also involve the examination of a voluminous amount of separate and distinct records asked for in a single request. To enable us to respond more quickly, you have the option to reformulate your request to reduce the amount of time required to complete our consultation, or to arrange an alternative timeframe for the processing of this request.

We regret the necessity of this delay, but assure you that your request will be processed as soon as possible. If you have any questions you may contact me. You may also contact our FOIA Public Liaison, Gary M. Stern for assistance at 8601 Adelphi Road, College Park, MD 20740-6002, 301-837-1750, Garym.Stern@nara.gov.

Sincerely,

Susan Gillett
Government Information Specialist
Office of General Counsel
Tel: 301-837-3409
Email: susan.gillett@nara.gov

## NARA FOIA Requirements for Processing Requests First-In, First-Out Basis

30.     NARA 2023 FOIA Annual Report and data which the NARA must publish in early 2024, will provide facts on whether the NARA National General Counsel Counsel ("NGC") complied NARA's regulation 36 C.F.R .§ 1250.26 (f) Processing queues. "NARA places FOIA requests in simple or complex processing queues to be processed in the order received, on a first-in, first-out basis."

31.     NARA NGC should not have completed any FOIA request filed after February 21, 2023, in the same queue as of October 5, 2023, if this is not another illegal concealment by the NARA and NARA NGC.

## Chelmowski Meets Requirements For Judicial Review Under the FOIA

32.     When an agency fails to respond to a request within twenty days, however, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," 5 U.S.C. § 552(a)(6)(C), and may therefore immediately seek judicial riew in federal district court. *See, e.g., Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1310 (D.C.Cir.2003) ("A requester is considered to have constructively exhausted administrative remedies and may seek

9

judicial review immediately if ... the agency fails to answer the request within twenty days.").

This kind of "constructive exhaustion" is "a special provision virtually unique to FOIA."

*Spannaus v. U.S Dep't of Justice,* 824 F.2d 52, 58 (D.C.Cir.1987).

## A2. NARA Never Provided a Privacy Act Response in Over 7 Months

33.     The NARA never provided a Privacy Act response for this February 21, 2023

request in over seven (7) months. Privacy Act Officer Joseph Scanlon decided he no longer

needed to comply with his mandatory duties after September 2, 2021 Privacy Act response. See

Exhibit 5 for Chelmowski's submission as he did with his request that Mr. Scanlon provide the

September 2, 2021 Privacy Act response.

34.     NARA Privacy Act Officer Joseph Scanlon ceased complying with his

mandatory duties again after providing his first Privacy Act response on September 2, 2021. See

Exhibit 2.

### *NARA Privacy Act Regulations*

35.     NARA regulations on "How long it will take for NARA to process my request?"

See 36 C.F.R. § 1202.44 and the following with emphasis added:

> 36 C.F.R. § 1202.44 How long will it take for NARA to process my request?"
> (a)      NARA will acknowledge your request **within 10 workdays of its receipt by NARA and if possible, will make the records available to you at that time.** If NARA cannot make the records immediately available, **the acknowledgment will indicate when the system manager will make the records available**

36.     The NARA Privacy Act requirements do not provide exclusions on compliance

if the requester's name is James Chelmowski or if the responsive records will provide facts of the

NARA corruption, fraud, malfeasance, etc.

### Chelmowski Meet Requirements For Judicial Review Under the Privacy Act

37.     There is no statutory requirement of exhaustion related to a request for access to

records. *See* 5 U.S.C. § 552a(d). To the extent exhaustion of administrative remedies is required, it is not a jurisdictional prerequisite. *See* \*863 *Taylor v. United States Treasury Dep't,* 127 F.3d 470, 475–76 (5th Cir.1997). *Wadhwa v. Dep't of Veterans Affs.*, 342 F. App'x 860, 862–63 (3d Cir. 2009).

## B. Background of NARA Illegal Concealment in 2020 to 2023

38.     After Joseph Scanlon's October 9, 2020 Declaration, the NARA ceased providing any Privacy Act response. The NARA refused to provide Chelmowski's right to the NARA supporting documents for Mr. Scanlon's Declaration from Chelmowski's October 16, 2020 request. The NARA would not even provide the FOIA exemptions in the FOIA response letter for the full denial of NARA supporting documents for the Joesph Scanlon Declaration.

39.     Chelmowski, the Public, and the Courts have the right to know all the facts of the NARA denying Chelmowski's rights and NARA's illegal concealment of NARA corruption, malfeasance, etc. Chelmowski's rights to the February 21, 2023 responsive records will provide these facts in the NARA records from October 16, 2020 to the current regarding Chelmowski's requests.

40.     NARA would not provide any FOIA response to any of  Chelmowski's October 16, 2020 to September 6, 2022 requests without Chelmowski filing lawsuits.

41.     NARA Joseph Scanlon provided facts that NARA completed many of these requests within weeks or a couple of months of the request date. The NARA is illegally denying Chelmowski's rights to these documents because the facts will prove NARA's corruption, malfeasance, etc.

42.     NARA Privacy Act Officer Joseph Scanlon would only provide his first-ever Privacy Act response on September 2, 2021, with virtually no responsive records except a few carefully selected communications from Chelmowski's October 16, 2020 to Aprl 1, 2021

11

requests. See Exhibit 2 for his Privacy Act response letter which included the following.

> I am releasing to you pursuant to the Privacy Act all administrative records contained in: NGC21-024, NGC21-111, NGC21-156, NGC21-251, NGC21-336, NGC21-338, NGC21-346, NGC21-347, NGC21-352, NGC21-354, NGC21-369 and NGC21-387.

> This completes the processing of this privacy Act request.

43. NARA Privacy Act Officer Joseph Scanlon would provide Chelmowski's rights to records in the Privacy Act System of Records regarding himself, including the following.

- "NARA 7- Freedom of Information Act (FOIA) and Mandatory Review of Classified Documents Request Files" for Chelmowski's Requests filed before October 16, 2020
- "NARA 23-Office of Inspector General Investigative Case Files"
- "NARA 40-The Office of Government Information Services (OGIS) Case Files'

44. NARA Debra Steidel Wall would not provide her mandatory Privacy Act Appeal Determination with Chelmowski's rights to the Privacy Act responsive records not produced by Joseph Scanlon on September 2, 2021.

45. Chelmowski, the Public, and the Courts should know the facts on why the NARA would not comply with Chelmowski's rights to his requests filed after Joseph Scanlon's October 8, 2020 Declaration was filed in the District Court.

## C. Documented 2020 and 2021 FOIA Searches and NARA is Still Concealing All Responsive Records from these Completed Searches for 30 Plus Months

### NARA Searches in 2020 and 2021 Ordered by Susan Gillett

46. NARA Joseph Scanlon's September 2, 2021 Privacy Act response provided a few emails on the NARA processing requests filed after October 15, 2020. See Exhibit 3 for the NARA very select internal emails in these processing requests.

47. NARA documented Susan Gillett's involvement in processing these requests that the NARA will not provide Chelmowski's rights in over 33 months without lawsuits. The following are snapshots from the beginning of Susan Gillett's emails ordering FOIA request

searches in December 2020 to March 2021 with the due date for the search completions.



Susan Gillett <susan.gillett@nara.gov>

---

### FOIA NGC21-111 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                          Mon, Dec 21, 2020 at 1:48 PM
To: GaryM Stern <garym.stern@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>, Joseph Scanlon <joseph.scanlon@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Gary,

I am contacting you because you may have records that are responsive to a FOIA request we received from James Chelmowski (copy attached).  In his request, he states:

*1) Provide all records the NARA keeps regarding interactions with FOIA requester and NARA Public Liaison from January 1, 2019 to later of December 1, 2020 or date of search.*

*2) Provide details of each incident and interaction of the NARA Public Liaison with an FOIA Requester which includes the NARA Public Liaison name, requester name, dates, and details of the NARA Public Liaison for assistance with FOIA requesters from January 1, 2019 to later of December 1, 2020 or date of search.*

We assigned his request the internal tracking number **NGC21-111.**  Please provide any possibly responsive records by **December 30, 2020.**   If you need more time, please let me know.

We interpret item #1 to be seeking any contacts you have had with Mr. Chelmowski as a FOIA requester, and item #2 to refer to your interaction with any other FOIA requesters from January 1, 2019 to today.

. . .



Susan Gillett <susan.gillett@nara.gov>

---

### FOIA NGC21-156 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                          Fri, Mar 26, 2021 at 5:14 PM
To: eDiscovery Requests <ediscovery.requests@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>

Good afternoon,

NGC  requests a search of all NARA emails from May 1, 2018 through March 26, 2021 that include the FOIA requester's name and given variations of the name.  The search should cover the entire email including email body, heading, subject line, metadata,email attachments, etc.

The names to search are:

"James Chelmowski or James Chelmowsky or Chelmowsky or Chelmowski or Jim Chelmowski or Jim Chelmowsky"

Please make the ZL results available to Jeannette Wise, Joseph Scanlon, Jodi Foor, and Wanda Williams.

If possible, we would like the search completed by **April 5, 2021**.

. . .



Susan Gillett <susan.gillett@nara.gov>

### FOIA NGC21-336 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                    Fri, Mar 26, 2021 at 4:35 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached). In his request he asks for:

> *1. All communications regarding James Chelmowski (Requester) including but not limited to all
> communications by all OGIS current and past employees (received or sent);*

> *2. All emails sent to OGIS@nara.gov;*

> *3. All OGIS submissions regarding James Chelmowski (he submitted or someone else submitted
> on his behalf as the FCC did this month) from January 1, 2018, to the later of the date of this
> search and March 9, 2021.*

We are doing ZL searches for #1 and #2. We need to conduct a search for possibly responsive
records for #3. Please make your date of search *January 1, 2018 through March 26, 2021.*

We have assigned this request internal tracking number **NGC21-336**. Please provide any possibly
responsive records by **April 5, 2021.** If you need more time, please let me know.

...



Susan Gillett <susan.gillett@nara.gov>

### FOIA NGC21-338 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                    Fri, Mar 26, 2021 at 4:57 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached). In his request he asks for:

> *The OGIS log with all OGIS requests pursuant to FOIA from requests submitted to the OGIS
> from December 1, 2018, to March 11, 2021. It must include the data the OGIS keeps like case
> number, date of request, requester's names, agency names, case manager, date closed, status,
> [and] outcome. The NARA has my permission to not redact my name James Chelmowski in
> these logs.*

Please make your dates of search *December 1, 2018 through March 26, 2021.*

We have assigned this request an internal tracking number **NGC21-338**. Please provide any possibly
responsive records by **April 7, 2021.** If you need more time, please let me know.

...

48.     According to her emails, Susan Gillett can not legally deny her knowledge of her

ordering searches for the following requests with estimated search completion dates.

- NGC21-111 estimated search completion date December 30, 2020

14

- NGC21-156 estimated search completion date April 5, 2021
- NGC21-336 estimated search completion date April 5, 2021
- NGC21-338 estimated search completion date April 7, 2021

**NARA General Counsel Gary Stern Documented Involvement in Processing Chelmowski's December 2, 2020 Request**

49.     NARA documented Gary Stern's involvement in processing these requests that

the NARA will not provide Chelmowski's rights in over 33 months without lawsuits.



NATIONAL ARCHIVES                                          Susan Gillett <susan.gillett@nara.gov>

---

**FOIA NGC21-111 (Chelmowski)**

Susan Gillett <susan.gillett@nara.gov>                                 Mon, Dec 21, 2020 at 1:48 PM
To: GaryM Stern <garym.stern@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>, Joseph Scanlon <joseph.scanlon@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Gary,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached). In his request, he states:

> 1) Provide all records the NARA keeps regarding interactions with FOIA requester and NARA
> Public Liaison from January 1, 2019 to later of December 1, 2020 or date of search.
>
> 2) Provide details of each incident and interaction of the NARA Public Liaison with an FOIA
> Requester which includes the NARA Public Liaison name, requester name, dates, and details of
> the NARA Public Liaison for assistance with FOIA requesters from January 1, 2019 to later of
> December 1, 2020 or date of search.

We assigned his request the internal tracking number **NGC21-111.** Please provide any possibly
responsive records by **December 30, 2020.** If you need more time, please let me know.

We interpret item #1 to be seeking any contacts you have had with Mr. Chelmowski as a FOIA
requester, and item #2 to refer to your interaction with any other FOIA requesters from January 1,
2019 to today.

50.     According to his emails, Gary Stern can not legally deny his knowledge of being

ordered to search for the following request with estimated search completion dates.

- NGC21-111 estimated search completion date December 30, 2020

**NARA General Counsel Gary Stern Responsibilities an Mandatory Duties**

51.     NARA General Counsel Gary Stern, who is also the NARA Chief FOIA Officer

and NARA Public Liaison, has mandatory duties 5 U.S.C. 552 (l) & (j). He is also the head of

the NARA National General Counsel ("NGC"). The NARA assigned all Chelmowski's FOIA

requests to the NGC to process.

## D. NARA Fraudulent October 28, 2021 FOIA Status Updates

52.     NARA Susan Gillett and/or Gary Stern documented knowledge of FOIA

searches were ordered with estimated completion dates including the following.

- NGC21-111 estimated search completion date December 30, 2020
- NGC21-156 estimated search completion date April 5, 2021
- NGC21-336 estimated search completion date April 5, 2021
- NGC21-338 estimated search completion date April 7, 2021

53.     Any FOIA status update after April 7, 2021, the NARA should be able to

provide status on the facts of these searches and when the NARA will provide Chelmowski's

right to

54.     NARA was required to have already processed Chelmowski's other requests,

including Chelmowski's October 16, 2020 #**NGC21-034** [NARA-NGC-2021-000046] before his

March 11, 2021 requet #NGC21-338 according to NARA regulation 36 C.F.R. § 1250.26 (f)

Processing queues. **NARA places FOIA requests in simple or complex processing queues to be**

**processed in the order received on a first-in, first-out basis.**

55.      On October 28, 2021, over six (6) months after the last search were completed

on or about April 7, 2021, NARA Susan Gillett, under the direction of Gary Stern, with the

knowledge of her involvement in processing these requests and completions of searches in 2020

and 2021 provided a status update on Chelmowski's FOIA requests beginning with his October

16, 2020 request. See Exhibit ____.

56.     Her October 28, 2021 status included the following with emphasis added,

**This is in response to your request of October 25, 2021 to Gary M. Stern, NARA's**
**FOIA Public Liaison,** for a status update for eight of your FOIA requests to NARA
listed below.  As you know, **FOIA requests are processed in the order of receipt**.

- **NGC21-034** [NARA-NGC-2021-000046] is #198 in our complex FOIA queue.
  Estimated completion time is 17 months from November 1, 2021.
- **NGC21-111** [NARA-NGC-2021-000212] is # 208 in our complex FOIA. Estimated
  completion time is 17 months from November 1, 2021.

16

- **NGC21-156** [NARA-NGC-2021-000282] is # 213 in our complex FOIA queue. Estimated completion time is 18 months from November 1, 2021.
- **NGC21-251** [NARA-NGC-2021-000433] is # 232 in our complex FOIA queue. Estimated completion time is 19 months from November 1, 2021.
- **NGC21-336** [NARA-NGC-2021-000606] is #243 in our complex FOIA queue. Estimated completion time is 21 months from November 1, 2021.
- **NGC21-338** [NARA-NGC-2021-000622] is # 244 in our complex FOIA queue. Estimated completion time is 21 months from November 1, 2021.
- **NGC21-346** [NARA-NGC-2021-000644] is # 245 in our complex FOIA queue**.** Estimated completion date is 21 months from November 1, 2021. Please note that this request is duplicative of NGC21-156; NGC21-336; NGC21-338 and NGC19-461. It extended the search date for NGC21-336 and NGC21-338.
- **NGC21-347** [NARA-NGC-2021-000647] is #246 in our complex FOIA queue. Please note that this request duplicates NGC21-251**.** Estimated completiontime 19 months from November 1, 2021.

These are conservative estimates since requests ahead of yours may move more quickly through the queue. **Please contact us again for a status update only if you have not received a response by the estimated completion dates above**.

57.     According to this October 28, 2021 email, the NARA would not provide Chelmowski's rights to transparency and status updates for at least another 17 months. "Please contact us again for a status update only if you have not received a response by the estimated completion dates above.

58.     Susan Gillett, Gary  Stern, and the NARA NGC knew that the NARA already completed these searches months before this October 28, 2021 status update. The NARA will not provide Chelmowski's rights to any additional status updates until after April 1, 2023. See the next section comparing Susan Gillett's October 28, 2021 status update, and her search request emails produced in the September 2, 2021 Privacy Act response. See Exhibit 1 for the full emails.

## E. NARA Facts Comparing Susan Gillett's October 28, 2021 Status Update and Her Email Requesting Searches

### a - NGC21-111 factual search completion date on or about December 30, 2020 – Status Update: The Estimated completion date is 17 months from November 1, 2021.

### *How could NGC21-111 be #208 in the complex queue on October 28, 2021, when Susan Gillett ordered the FOIA search on December 21, 2020, to be completed by December 30, 2020?*

59. Ms. Gillett's October 28, 2021 Status Update for Chelmowski's December 1, 2020 request has the NARA Estimated Response Date of about April 1, 2023. See the snapshot from the status update email.

- **NGC21-111** [NARA-NGC-2021-000212] is # 208 in our complex FOIA queue. Estimated completion time is 17 months from November 1, 2021.

60. Ms. Gillett's December 21, 2020 email requesting the search to be completed by December 30, 2020. See the email snapshot below with the search due date.



NATIONAL ARCHIVES

Susan Gillett <susan.gillett@nara.gov>

### FOIA NGC21-111 (Chelmowski)

Susan Gillett <susan.gillett@nara.gov>     Mon, Dec 21, 2020 at 1:48 PM
To: GaryM Stern <garym.stern@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>, Joseph Scanlon <joseph.scanlon@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Gary,

I am contacting you because you may have records that are responsive to a FOIA request we received from James Chelmowski (copy attached). In his request, he states:

*1) Provide all records the NARA keeps regarding interactions with FOIA requester and NARA Public Liaison from January 1, 2019 to later of December 1, 2020 or date of search.*

*2) Provide details of each incident and interaction of the NARA Public Liaison with an FOIA Requester which includes the NARA Public Liaison name, requester name, dates, and details of the NARA Public Liaison for assistance with FOIA requesters from January 1, 2019 to later of December 1, 2020 or date of search.*

We assigned his request the internal tracking number **NGC21-111.** Please provide any possibly responsive records by **December 30, 2020.** If you need more time, please let me know.

We interpret item #1 to be seeking any contacts you have had with Mr. Chelmowski as a FOIA requester, and item #2 to refer to your interaction with any other FOIA requesters from January 1, 2019 to today.

61. NARA will not complete Chelmowski's December 1, 2020 request, which was

completed on or about December 30, 2020, until about April 1, 2023. The NARA needs about 28 months to review the search results to provide a FOIA determination letter due in January 2021.

62.     It is now over six (6) months past April 1, 2023 (17 months from November 1, 2021), and the NARA still will not provide Chelmowski's rights without filing a lawsuit. The FOIA search was ordered by Susan Gillett and completed 33 months ago.

**b. NGC21-156 factual search completion date on or about April 5, 2021–**
**Status Update: The Estimated Completion Date is 18 months from November 1, 2021.**

***How could NGC21-156 be #213 in the complex queue on October 28, 2021, when Susan Gillett ordered the FOIA search on March 26, 2021, to be completed by April 5, 2021***

63.     Ms. Gillett's October 28, 2021 Status Update for Chelmowski's December 21, 2020 request has the NARA Estimated Response Date of May 1, 2023. See the snapshot from the status update email.

- **NGC21-156** [NARA-NGC-2021-000282] is # 213 in our complex FOIA queue. Estimated completion time is 18 months from November 1, 2021.

64.     Ms. Gillett's March 26, 2021 email requesting the search was to be completed by April 5, 2021. See the email snapshot below with the search due date.



**FOIA NGC21-156 (Chelmowski)**

Susan Gillett <susan.gillett@nara.gov>                                    Fri, Mar 26, 2021 at 5:14 PM
To: eDiscovery Requests <ediscovery.requests@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>

Good afternoon,

NGC  requests a search of all NARA emails from May 1, 2018 through March 26, 2021 that include the FOIA requester's name and given variations of the name.  The search should cover the entire email including email body, heading, subject line, metadata,email attachments, etc.

The names to search are:

"James Chelmowski or James Chelmowsky or Chelmowsky or Chelmowski or Jim Chelmowski or Jim Chelmowsky"

Please make the ZL results available to Jeannette Wise, Joseph Scanlon, Jodi Foor, and Wanda Williams.

If possible, we would like the search completed by **April 5, 2021**.

65.     NARA will not complete Chelmowski's December 21, 2020 which was to be completed on or about April 5, 2021, until about May 1, 2023. The NARA needs about 25 months to review the search results to provide a FOIA determination letter due in January 2021.

66.     It is now over five (5) months past May 1, 2023 (18 months from November 1, 2021), and the NARA still will not provide Chelmowski's rights without filing a lawsuit. The FOIA search ordered by Susan Gillett was completed 25 months ago.

**c. NGC21-336 factual search completion date on or about April 5, 2021–**
**Status Update: The Estimated Completion Date is 21 months from November 1, 2021.**

***How could NGC21-336 be #243 in the complex queue on October 28, 2021, when Susan Gillett ordered the FOIA search on March 26, 2021, to be completed by April 5, 2021?***

67.     Ms. Gillett's October 28, 2021 Status Update for Chelmowski's March 8, 2021 request has the NARA Estimated Response Date of August 1, 2023. See the snapshot from the status update email.

- **NGC21-336** [NARA-NGC-2021-000606] is #243 in our complex FOIA queue.  Estimated completion time is 21 months from November 1, 2021

68.     Ms. Gillett's March 26, 2021 email requesting the search to be completed by April 5, 2021. See the email snapshot below with the search due date.


NATIONAL
ARCHIVES

Susan Gillett <susan.gillett@nara.gov>

---

### FOIA NGC21-336 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                    Fri, Mar 26, 2021 at 4:35 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire <carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received from James Chelmowski (copy attached).  In his request he asks for:

    *1. All communications regarding James Chelmowski (Requester) including but not limited to all communications by all OGIS current and past employees (received or sent);*

    *2. All emails sent to OGIS@nara.gov;*

    *3. All OGIS submissions regarding James Chelmowski (he submitted or someone else submitted on his behalf as the FCC did this month) from January 1, 2018, to the later of the date of this search and March 9, 2021.*

We are doing ZL searches for #1 and #2.  We need you to conduct a search for possibly responsive records for #3.  Please make your date of search *January 1, 2018 through March 26, 2021.*

We have assigned this request internal tracking number **NGC21-336**.  Please provide any possibly responsive records by **April 5, 2021.**  If you need more time, please let me know.

…

69.     NARA will not complete Chelmowski's March 8, 2021 request and the search was conducted on or about April 5, 2021 until about August 1, 2023. The NARA needs about 28 months to review the search results to provide a FOIA determination letter due in April 2021.

70.     It is now over two (2) months past August 1, 2023 (21 months from November 1, 2021), and the NARA still will not provide Chelmowski's rights without filing a lawsuit. The FOIA search ordered by Susan Gillett was to be completed 28 months ago.

**d. NGC21-338 factual search completion date on or about April 7, 2021–**
**Status Update: The Estimated Completion Date is 18 months from November 1, 2021.**

***How could NGC21-338 be #244 in the complex queue on October 28, 2021, when Susan Gillett ordered the FOIA search on March 26, 2021, to be completed by April 7, 2021?***

71.     Ms. Gillett's October 28, 2021 Status Update for Chelmowski's March 11, 2021 request has the NARA Estimated Response Date of August 1, 2023. See the snapshot from the status update email.

- **NGC21-338** [NARA-NGC-2021-000622] is # 244 in our complex FOIA

21

queue.  Estimated completion time is 21 months from November 1, 2021.

72.     Ms. Gillett's March 26, 2021 email requesting the search to be completed by

April 5, 2021. See the email snapshot below with the search due date.

 NATIONAL ARCHIVES

Susan Gillett <susan.gillett@nara.gov>

---

**FOIA NGC21-338 (Chelmowski)**

Susan Gillett <susan.gillett@nara.gov>                                      Fri, Mar 26, 2021 at 4:57 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached).  In his request he asks for:

> *The OGIS log with of all OGIS requests pursuant to FOIA from requests submitted to the OGIS
> from December 1, 2018, to March 11, 2021. It must include the data the OGIS keeps like case
> number, date of request, requester's names, agency names, case manager, date closed, status,
> [and] outcome.  The NARA has my permission to not redact my name James Chelmowski in
> these logs.*

Please make your dates of search *December 1, 2018 through March 26, 2021.*

We have assigned this request an internal tracking number **NGC21-338**.  Please provide any possibly
responsive records by **April 7, 2021.**  If you need more time, please let me know.

---

…

73.     NARA will not complete Chelmowski's March 11, 2021 request with a search

conducted on or about April 7, 2021, until about August 1, 2023. The NARA needs about 28

months to review the search results to provide a FOIA determination letter that was due in April

2021.

74.     It is now over two (2) months past August 1, 2023 (21 months from November 1,

2021), and the NARA still will not provide Chelmowski's rights without filing a lawsuit. The

FOIA search was ordered by Susan Gillett and completed 28 months ago.

## F. NARA 2021 Annual Reports and Data Provides More Facts of NARA Illegal Denying Chelmowski's Rights For Multiple Years

75.     NARA General Counsel Gary Stern and  Susan Gillett confirmed the facts in the

NARA regulation 36 C.F.R. § 1250.26 (f) Processing queues. **NARA places FOIA requests in**

**simple or complex processing queues to be processed in the order received on a first-in, first-out basis.**

76.     The NARA assigned all Chelmowski's requests to the National General Counsel ("NGC") to process in the "Complex" queue. The NARA NGC should not have completed any "Complex" FOIA requests filed after October 16, 2020, as of September 30, 2021, in the NARA 2021 FOIA Annual Report and data.

77.     The following is a summary of Chelmowski's requests filed on and after October 16, 2020, with the NARA "Complex" queue position as October 28, 2021.

- **NGC21-034** [NARA-NGC-2021-000046] is #198 in our complex FOIA queue.
- **NGC21-111** [NARA-NGC-2021-000212] is # 208 in our complex FOIA queue.
- **NGC21-156** [NARA-NGC-2021-000282] is # 213 in our complex FOIA queue.
- **NGC21-251** [NARA-NGC-2021-000433] is # 232 in our complex FOIA queue.
- **NGC21-336** [NARA-NGC-2021-000606] is #243 in our complex FOIA queue.
- **NGC21-338** [NARA-NGC-2021-000622] is # 244 in our complex FOIA queue.
- **NGC21-346** [NARA-NGC-2021-000644] is # 245 in our complex FOIA queue.
- **NGC21-347** [NARA-NGC-2021-000647] is #246 in our complex FOIA queue.

78.     Any NGC "Complex" FOIA request filed after October 16, 2020, must be at least #198 in the complex FOIA queue as of September 30, 2021, end date of the NARA 2021 Annual Report, and not completed by September 30, 2021, if the NARA did not commit corruption and malfeasance against Chelmowski.

79.     The 2021 FOIA Annual Report and data are from October 1, 2020, to September 30, 2021. Therefore, any "Complex" FOIA request filed after Chelmowski's October 16, 2020, must be at least #199 in the "Complex" queue and could not be completed until approximately 17 months after November 1, 2021, based on the October 29, 2021 FOIA status update to Chelmowski.

80.     The NARA NGC completed 52 "Complex" requests filed on or after October 16, 2020, with an average completion time of about four (4) weeks. According to the NARA FOIA

23

facts, NARA in the NARA 2021 Annual FOIA[1] and raw data[2]. See the following request that should have been at #198 in the "Complex" queue and not completed as of October 28, 2021, if the NARA did not commit Fraud to Chelmowski in the October 28, 2021 Status Update.

| # | request id | foia complexity cd | request receipt dt | request completion dt | foia determination cd |
|---|---|---|---|---|---|
| 1 | NGC21-071 | Complex | 11/12/2020 | 11/12/2020 | Procedural denial |
| 2 | NGC21-074 | Complex | 11/13/2020 | 12/22/2020 | Partial grant |
| 3 | NGC21-084 | Complex | 11/18/2020 | 1/5/2021 | Partial grant |
| 4 | NGC21-085 | Complex | 11/18/2020 | 12/17/2020 | Procedural denial |
| 5 | NGC21-109 | Complex | 11/30/2020 | 12/22/2020 | Partial grant |
| 6 | NGC21-133 | Complex | 12/8/2020 | 1/7/2021 | Denial |
| 7 | NGC21-138 | Complex | 12/11/2020 | 1/12/2021 | Procedural denial |
| 8 | NGC21-139 | Complex | 12/11/2020 | 1/12/2021 | Procedural denial |
| 9 | NGC21-140 | Complex | 12/11/2020 | 1/12/2021 | Procedural denial |
| 10 | NGC21-141 | Complex | 12/11/2020 | 1/12/2021 | Procedural denial |
| 11 | NGC21-162 | Complex | 12/22/2020 | 1/28/2021 | Procedural denial |
| 12 | NGC21-180 | Complex | 1/4/2021 | 1/29/2021 | Procedural denial |
| 13 | NGC21-181 | Complex | 1/4/2021 | 1/27/2021 | Denial |
| 14 | NGC21-187 | Complex | 1/11/2021 | 5/11/2021 | Partial grant |
| 15 | NGC21-230 | Complex | 1/22/2021 | 2/22/2021 | Procedural denial |
| 16 | NGC21-246 | Complex | 1/28/2021 | 2/26/2021 | Procedural denial |
| 17 | NGC21-249 | Complex | 2/1/2021 | 2/26/2021 | Procedural denial |
| 18 | NGC21-257 | Complex | 2/4/2021 | 2/26/2021 | Procedural denial |
| 19 | NGC21-258 | Complex | 2/5/2021 | 4/9/2021 | Procedural denial |
| 20 | NGC21-266 | Complex | 2/5/2021 | 2/25/2021 | Procedural denial |
| 21 | NGC21-330 | Complex | 3/8/2021 | 6/17/2021 | Procedural denial |
| 22 | NGC21-348 | Complex | 3/22/2021 | 3/29/2021 | Procedural denial |
| 23 | NGC21-368 | Complex | 3/26/2021 | 4/8/2021 | Partial grant |
| 24 | NGC21-380 | Complex | 3/29/2021 | 8/30/2021 | Procedural denial |
| 25 | NGC21-406 | Complex | 4/9/2021 | 5/6/2021 | Partial grant |
| 26 | NGC21-470 | Complex | 5/3/2021 | 6/1/2021 | Procedural denial |
| 27 | NGC21-483 | Complex | 5/11/2021 | 7/20/2021 | Procedural denial |
| 28 | NGC21-520 | Complex | 5/27/2021 | 7/20/2021 | Partial grant |
| 29 | NGC21-520 | Complex | 5/27/2021 | 7/20/2021 | Partial grant |
| 30 | NGC21-525 | Complex | 6/3/2021 | 6/14/2021 | Partial grant |
| 31 | NGC21-565 | Complex | 6/21/2021 | 8/2/2021 | Partial grant |
| 32 | NGC21-570 | Complex | 6/22/2021 | 6/24/2021 | Partial grant |
| 33 | NGC21-631 | Complex | 7/14/2021 | 7/23/2021 | Procedural denial |
| 34 | NGC21-642 | Complex | 7/20/2021 | 8/2/2021 | Partial grant |
| 35 | NGC21-645 | Complex | 7/20/2021 | 8/2/2021 | Partial grant |

[1] See https://www.archives.gov/foia/reports & https://www.archives.gov/files/foia/reports/nara-fy21-final.pdf
[2] See https://www.archives.gov/files/foia/reports/nara-foia-raw-date-fy21.xlsx for the NARA 2021 FOIA Report the data

| 36 | NGC21-651 | Complex | 7/23/2021 | 8/20/2021 | Partial grant |
| 37 | NGC21-652 | Complex | 7/23/2021 | 8/20/2021 | Partial grant |
| 38 | NGC21-668 | Complex | 7/29/2021 | 7/30/2021 | Procedural denial |
| 39 | NGC21-669 | Complex | 7/30/2021 | 8/12/2021 | Procedural denial |
| 40 | NGC21-672 | Complex | 7/30/2021 | 8/2/2021 | Procedural denial |
| 41 | NGC21-673 | Complex | 7/22/2021 | 8/2/2021 | Partial grant |
| 42 | NGC21-686 | Complex | 8/4/2021 | 8/17/2021 | Partial grant |
| 43 | NGC21-686 | Complex | 8/4/2021 | 8/17/2021 | Partial grant |
| 44 | NGC21-692 | Complex | 8/5/2021 | 8/31/2021 | Partial grant |
| 45 | NGC21-722 | Complex | 8/24/2021 | 8/25/2021 | Procedural denial |
| 46 | NGC21-737 | Complex | 8/25/2021 | 8/30/2021 | Procedural denial |
| 47 | NGC21-748 | Complex | 8/30/2021 | 9/30/2021 | Partial grant |
| 48 | NGC21-769 | Complex | 9/7/2021 | 10/5/2021 | Procedural denial |
| 49 | NGC21-780 | Complex | 9/8/2021 | 10/6/2021 | Partial grant |
| 50 | NGC21-785 | Complex | 9/10/2021 | 9/30/2021 | Procedural denial |
| 51 | NGC21-815 | Complex | 9/21/2021 | 10/6/2021 | Procedural denial |
| 52 | NGC21-816 | Complex | 9/21/2021 | 9/30/2021 | Partial grant |

81.     The NARA 2022 FOIA Annual Report and data will provide facts of another 50 NGC "Complex" requests filed after Chelmowski's requests are completed by September 30, 2022.

82.     The NARA 2023 FOIA Annual Report and data will probably provide facts of another about 50 NGC "Complex" requests filed after Chelmowski's requests were completed by September 30, 2023.

83.     The February 23, 2023 responsive records will provide facts when the NGC completed over 150 "Complex" FOIA requests filed after Chelmowski's request in an average of about five (5) weeks and why NARA NGC will not provide Chelmowski's rights in multiple years and require him to file lawsuits to receive his rights.

## G. NARA Illegal Concealment and Actions With Chelmowski Began in 2016

### NARA Concealment of OGIS Corruption, Malfeasance, Etc. in 2016

84.     Before 2020, the NARA would provide FOIA responses that were full of false statements. The Heads of the NARA could not affirm a single detail of the NARA searches or

withholding on Appeals, including Chelmowski's 2016 FOIA Appeal. See the following paragraphs in this section to provide facts on NARA's illegal concealment of the NARA corruption, malfeasance, etc., beginning in 2016.

85.     The NARA would not comply with Chelmowski's rights beginning in 2015 when Chelmowski requested his rights with the Office of Government Information System ("OGIS") regarding his 2015 FOIA Appeal with the FCC. The FCC would not provide their mandatory FOIA Appeal decision in 2015.

86.     The 2015 FOIA responsive records were for material evidence in active litigation against the FCC and AT&T. The FCC would not even provide Chelmowski's rights to the mandatory FCC Informal Complaint decision. The FCC would not comply with Chelmowski's rights. Instead, it provided a letter with no legal authority used to deceive Courts into denying Chelmowski's rights and protecting the FCC and AT&T.

87.     The OGIS and the FCC denied Chelmowski's rights to OGIS mediation on the FCC FOIA Appeal decision status. The OGIS would not even comply with the requirements in the OGIS closing letter on facts and history of what was done i.e. Chelmowski filed a FOIA Appeal, and the FCC would not provide a FOIA Appeal decision; therefore, Chelmowski constructively exhausted remedies for judicial review. See the following OGIS closing letter for the required items.

> The closing letter should follow the closing letter template and may include language in the Standard Language Bank (P:/ 08 Mediation/ Standard Language, Templates and Contacts). Letter should include:
> • Summary of customer's FOIA request history and chronology.
> • Summary of customer's specific request to OGIS.
> • Detailed explanation of the action that OGIS took in the case, including who OGIS spoke with at an agency
> • The final outcome of the case, including any agreements made by the requester and the agency.

88.     Chelmowski discovered that FCC and FCC Joanne Wall drafted the OGIS closing

letter, including removing the OGIS required closing items to be used against Chelmowski in active and future litigation. The OGIS completed their mandatory duties on Chelmowski's rights in the OGIS Standard Operating Procedures. The Public and the Courts should know the OGIS policy and procedures. See Exhibit 6 for the redacted version of the OGIS policies and procedures.

89.     See the following snapshot of a NARA Unredacted January 20, 2016 email confirming FCC's drafted the OGIS closing letter produced in 2019. Note: NARA redacted this email in Chelmowski's 2016 FOIA request response to conceal the FCC drafted the OGIS closing letter.



Carrie McGuire <carrie.mcguire@nara.gov>

Re: NARA's Draft Letter to Mr. Chelmowski with Joanne's Edits

Carrie McGuire <carrie.mcguire@nara.gov>                     Wed, Jan 20, 2016 at 3:05 PM
To: Stephanie Kost <Stephanie.Kost@fcc.gov>
Cc: Joanne Wall <Joanne.Wall@fcc.gov>

Here is the letter closing Mr. Chelmowski's OGIS case. Thanks again for your assistance.

Carrie

Carrie McGuire
Mediation Team Lead
Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road (OGIS)
College Park, MD 20740-6001
(202)741-5774
toll-free (877)684-6448
carrie.mcguire@nara.gov
web site: ogis.archives.gov
blog: blogs.archives.gov/foiablog

## NARA Illegal Concealment From Chelmowski's 2016 FOIA and District Court Subpoena

90.     Chelmowski needed his rights to OGIS case file, communications, and facts from the OGIS in *Chelmowski v FCC* ND IL 16cv5587 for Honorable Judge Sharon Johnson-Coleman to rule on the actual material facts in his September 11, 2015 request and his FOIA Appeal. The FCC provided false statements of the FCC FOIA policies under the penalty of perjury to deny Chelmowski rights with the aid of the NARA concealing material facts.

**NARA Communications Admitting Refusal Comply to Chelmowski's 2016 FOIA Request and District Court Subpoena**

91.      Chelmowski received a series of redacted 2016 communications from the NARA in 2019 and 2020 through a Court order regarding the NARA processing Chelmowski's 2016 FOIA request and subpoena.

92.      These 2016 redacted emails prove that the NARA Director of Litigation Alina Semo and other NARA confessed that the NARA did not comply with Chelmowski's FOIA rights in 2016. The NARA Director of Litigation laid the foundation to continue concealing the same NARA federal records regarding Chelmowski in a District Court subpoena.

93.      The NARA Director of Litigation, Alina Semo, wanted her knowledge of the NARA illegal actions and NARA corruption to be concealed by circumventing future discovery of the facts on the NARA corruption beginning in 2016 from Chelmowski's rights of FOIA or any other legal discovery by an in-person meeting in the following email.

On Thu, Jul 28, 2016 at 6:25 PM, Alina Semo <alina.semo@nara.gov> wrote:
I'll explain the issue more in person.

**Jodi** -(b) (5)

Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)
National Archives and Records Administration

94.      The NARA email communications regarding a 2016 District Court subpoena because the NARA refused to produce Chelmowski's rights to the NARA responsive records through 2016 FOIA. Beginning in December 2015, the NARA was involved with corruption with FCC and AT&T against Chelmowski. See the following email snapshots of the NARA concealing their corruption with the FCC and AT&T chronologically during active litigation with Chelmowski.

**Alina Semo** <alina.semo@nara.gov>
To: Jodi Foor <jodi.foor@nara.gov>
Cc: Joseph Scanlon <joseph.scanlon@nara.gov>

Tue, Jul 12, 2016 at 6:43 PM

Hi Jodi; let's catch up tomorrow morning about finalizing this request – or did you already finalize and send out today? (b) (5)                                    Did Gary touch on that during yesterday's conf. call?

Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)

Chelmowski 003309

On Fri, Jul 29, 2016 at 6:36 AM, Alina Semo <alina.semo@nara.gov> wrote:
Thanks Jodi - that's what I thought - now he's trying a work-around via subpoena - interesting!

On Friday, July 29, 2016, Jodi Foor <jodi.foor@nara.gov> wrote:
Good Morning,

This is the case we just worked and sent out a response (b) (5)

Jodi

Jodi L. Foor
Deputy Freedom of Information Act Officer/Archivist
National Archives and Records Administration
Office of General Counsel
College Park, MD
301-837-2099

Chelmowski 002110

https://records.zlticloud.com/ps/PmApp/zlp_dummy?tk=J00AUUYCBBCELLPT1XQ4C...        5/25/2018

Jodi.Foor@nara.gov

On Thu, Jul 28, 2016 at 6:25 PM, Alina Semo <alina.semo@nara.gov> wrote:
I'll explain the issue more in person.

**Jodi** - (b) (5)

Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)
National Archives and Records Administration

**Alina Semo** <alina.semo@nara.gov>
To: Jodi Foor <jodi.foor@nara.gov>
Cc: Joseph Scanlon <joseph.scanlon@nara.gov>

Tue, Jul 12, 2016 at 6:43 PM

Hi Jodi; let's catch up tomorrow morning about finalizing this request – or did you already finalize and send out today? (b)(5)                    Did Gary touch on that during yesterday's conf. call?

Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)

Chelmowski 003309

29

On Fri, Jul 29, 2016 at 6:36 AM, Alina Semo <alina.semo@nara.gov> wrote:
> Thanks Jodi - that's what I thought - now he's trying a work-around via subpoena - interesting!

On Friday, July 29, 2016, Jodi Foor <jodi.foor@nara.gov> wrote:
> Good Morning,
>
> This is the case we just worked and sent out a response [b) (5)]
>
> Jodi
>
> Jodi L. Foor
> Deputy Freedom of Information Act Officer/Archivist
> National Archives and Records Administration
> Office of General Counsel
> College Park, MD
> 301-837-2099

Chelmowski 002110

https://records.zlticloud.com/ps/PmApp/zlp_dummy?tk=J00AUUYCBBCELLPT1XQ4C...      5/25/2018

Page 2 of 5

Jodi.Foor@nara.gov

On Thu, Jul 28, 2016 at 6:25 PM, Alina Semo <alina.semo@nara.gov> wrote:
> I'll explain the issue more in person.
>
> **Jodi** - [b) (5)]
>
> Alina M. Semo
> Director of Litigation
> Office of General Counsel (NGC)
> National Archives and Records Administration

30



On Fri, Jul 29, 2016 at 6:36 AM, Alina Semo <alina.semo@nara.gov> wrote:
Thanks Jodi - that's what I thought - now he's trying a work-around via subpoena - interesting!

On Friday, July 29, 2016, Jodi Foor <jodi.foor@nara.gov> wrote:
Good Morning,

This is the case we just worked and sent out a response (b) (5)

Jodi

Jodi L. Foor
Deputy Freedom of Information Act Officer/Archivist
National Archives and Records Administration
Office of General Counsel
College Park, MD
301-837-2099

Chelmowski 002110

https://records.zlticloud.com/ps/PmApp/zlp_dummy?tk=J00AUUYCBBCELLPT1XQ4C...     5/25/2018

Page 2 of 5

Jodi.Foor@nara.gov

On Thu, Jul 28, 2016 at 6:25 PM, Alina Semo <alina.semo@nara.gov> wrote:
I'll explain the issue more in person.

**Jodi** - (b) (5)

Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)
National Archives and Records Administration

On Fri, Jul 29, 2016 at 2:42 PM, Alina Semo <alina.semo@nara.gov> wrote:
Hi Nikki: This subpoena is related to the a recent FOIA request that Jodi
just closed out. (b) (5)

Anyway I kindly broke the news to Jeff that we will
need to handle the subpoena, as I didn't think it was appropriate for you
guys to deal with it. Hope you agree - if you don't let's discuss.

(PS: Our first stab at this will be a nice Touhy letter that tells him we are
unable to respond in the absence of a court order). - Alina


Alina M. Semo
Director of Litigation
Office of General Counsel (NGC)
National Archives and Records Administration

95.     The NARA would not comply with Chelmowski's rights 2016 FOIA request and

2016 District Court Subpoena for the identical records. Joseph Scanlon's October 8, 2020

Declarations were laced with false and/or intentional misrepresentation to conceal the NARA illegal actions from the Court to deny Chelmowski's rights to the NARA facts and communications of the NARA chilling corruption, malfeasances, quid pro quo, fraud, etc. against him.

**NARA Aided and Abetted the FCC and AT&T**

96.     The NARA denied Chelmowski's rights to aid and abet the FCC and AT&T in denying Chelmowski's rights to the NARA records regarding Chelmowski in 2016, including all the FCC's communications with AT&T regarding Chelmowski from 2011 to 2016.

97.     The FCC used multiple concealment schemes to deny Chelmowski his rights to FCC's communications with AT&T regarding himself. The FCC needed the NARA's help in these concealment schemes to aid and abet the FCC and AT&T.

98.     Thanks to help from the NARA, Chelmowski could not obtain his rights to the FCC's communications with AT&T regarding Chelmowski from Federal Court litigations. The NARA probably concealed the facts of the NARA quid pro quo received for aiding and abetting the FCC and AT&T.

99.     Chelmowski has the rights to the NARA documents regarding himself with the NARA **no matter how massive the NARA corruption that would be exposed** with the facts in NARA documents from December 2015 to date.

## H. Chelmowski, the Public, and the Courts Have the Right to the Facts of the NARA Corruption, Malfeasance, Etc.

100.     How many years of NARA illegal concealment of NARA corruption, fraud, malfeasance, etc. should the NARA be allowed?

101.     Chelmowski has rights with the NARA, and NARA has mandatory duties to comply with Chelmowski's rights even if NARA decides use corruption, malfeasance, etc.

against him.

102.     The responsive records to this February 21, 2023 request will provide

Chelmowski and the Public with the facts on everything regarding these requests from October

16, 2020, to the date of production of Chelmowski's rights from this lawsuit.

## I. The US Supreme Court Rulings and Congress – the NARA MUST Be ACCOUNTABLE and NEED to Be CHECK AGAINST CORRUPTION

103.     **The basic purpose of FOIA is to ensure an informed citizenry, vital to the

functioning of a democratic society, <u>needed to check against corruption and to hold the

governors accountable to the governed</u>**." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146,

152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989) (with emphasis added).

104.     Congress enacted. FOIA "to pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose,* 425 U.S. 352, 361,

96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (citation omitted). "**The basic purpose of FOIA is to

ensure an informed citizenry, vital to the functioning of a democratic society, needed to

check against corruption and to hold the governors accountable to the governed**." *John Doe

Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S. Ct. 471, 107 L.Ed.2d 462 (1989) (citation

omitted).

## CAUSES OF ACTION

### CLAIM 1

FREEDOM OF INFORMATION ACT
IN RESPONDING TO CHELMOWSKI'S FEBRUARY 21, 2023 FOIA/PA REQUEST:

CONCEALING ALL FOIA RESPONSIVE RECORDS

1.     Chelmowski hereby incorporates by reference the allegations in the preceding paragraphs.

2.     Chelmowski has a statutory right to have the NARA process its FOIA request in a manner that

complies with the FOIA. The NARA violated Chelmowski's rights in this regard when NARA unlawfully concealed all responsive records, and the response to Chelmowski's February 23 2023 FOIA request.

3. The NARA violated and is violating the FOIA by failing to make the records subject to Chelmowski's FOIA request promptly available to Chelmowski.

4. Each and every allegation in this claim is a separate violation of the FOIA for which this Court can provide relief to Chelmowski under the FOIA.

5. The NARA's violations of the FOIA with respect to its response to Chelmowski's February 21, 2023 FOIA/PA request entitle Chelmowski to an award of reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

CLAIM 2

VIOLATIONS OF THE PRIVACY ACT IN RESPONDING TO
CHELMOWSKI'S FEBRUARY 21, 2023 FOIA /PA REQUEST:
VIOLATION OF THE PRIVACY ACT ACCESS

CONCEALING ALL OF THE PRIVACY ACT RESPONSIVE RECORDS

1. Chelmowski hereby incorporates by reference the allegations in the preceding paragraphs.

2. Chelmowski has a statutory right to have the NARA records in the Privacy Act System of Records in a manner that complies with the PA law. NARA violated Chelmowski's rights in this regard when the NARA refused to provide the PA responsive records and presumably failed to Search for the PA responsive records in the NARA Privacy Act System of Records.

3. The NARA FOIA and Privacy Act Officer Joseph Scanlon willfully refused to do his mandatory in providing his Privacy Act Response on February 21, 2021. Apparently, the Privacy Act

34

responsive records will give facts on Mr. Scanlon misconduct, fraud, and/or perjury.

4.     Each and every allegation in this claim is a separate violation of the Privacy Act for which this

Court can provide relief to Chelmowski under the Privacy Act.

5.     The NARA's violations of the Privacy Act with respect to its response to Chelmowski's February

21, 2023 FOIA/PA request entitle Chelmowski to an award of damages, reasonable attorneys' fees

and other litigation costs pursuant to 5 U.S.C. § 552a(g)(4)(B).


# **PRAYER FOR RELIEF**


WHEREFORE, James Chelmowski respectfully requests that the Court:

A.     Adjudge and declare that NARA has violated the FOIA and Privacy Act for the

reasons set forth above;

B.     Order NARA to comply immediately with both the FOIA and Privacy Act by

providing Chelmowski with the required determinations and all non-exempt records subject to

Chelmowski's February 21, 2023 FOIA and Privacy Act request.

C.     Declare that Chelmowski is the prevailing party and/or substantially prevailing

party in this matter; that the position of the government in this action was not substantially

justified; and that there are no special circumstances that make an award of costs, damages, and

reasonable attorneys' fees to Chelmowski unjust;

D.     Award Chelmowski its damages, reasonable attorneys' fees, litigation costs, and

damages pursuant to 5 U.S.C. § 552(a)(4)(E) and/or  5 U.S.C. § 552a(g)(4)(B) and/or award

Chelmowski its reasonable fees, expenses, costs, and disbursements, including attorneys' fees

associated with this litigation, under the Equal Access to Justice Act, 28 U.S.C. § 2412;

E. Grant James Chelmowski such additional relief as the Court may deem just and proper.

DATED this 5th day of October 2023.

Respectfully submitted,

/s/ James Chelmowski

James Chelmowski
Pro Se Plaintiff

705 W Central Rd
Mt Prospect, IL 60056

# Exhibit 1

NARA's Very Selected Emails From September 2, 2021 Privacy Act Response in Processing
NARA Processing Chelmowski's FOIA Requests from December 2020 to August 2021

-



Susan Gillett <susan.gillett@nara.gov>

---

# FOIA NGC21-156 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                      Fri, Mar 26, 2021 at 5:14 PM
To: eDiscovery Requests <ediscovery.requests@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>

Good afternoon,

NGC  requests a search of all NARA emails from May 1, 2018 through March 26, 2021 that include the FOIA requester's name and given variations of the name.  The search should cover the entire email including email body, heading, subject line, metadata,email attachments, etc.

The names to search are:

"James Chelmowski or James Chelmowsky or Chelmowsky or Chelmowski or Jim Chelmowski or Jim Chelmowsky"

Please make the ZL results available to Jeannette Wise, Joseph Scanlon, Jodi Foor, and Wanda Williams.

If possible, we would like the search completed by **April 5, 2021**.

Let me know if you have any questions or concerns, or will need more time.

Thank you for your assistance.

Sincerely,
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov





**NATIONAL ARCHIVES**                                    Susan Gillett <susan.gillett@nara.gov>

---

## FOIA NGC21-111 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                          Mon, Dec 21, 2020 at 1:48 PM
To: GaryM Stern <garym.stern@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>, Joseph Scanlon <joseph.scanlon@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Gary,

I am contacting you because you may have records that are responsive to a FOIA request we received from James Chelmowski (copy attached).  In his request, he states:

> *1) Provide all records the NARA keeps regarding interactions with FOIA requester and NARA Public Liaison from January 1, 2019 to later of December 1, 2020 or date of search.*

> *2) Provide details of each incident and interaction of the NARA Public Liaison with an FOIA Requester which includes the NARA Public Liaison name, requester name, dates, and details of the NARA Public Liaison for assistance with FOIA requesters from January 1, 2019 to later of December 1, 2020 or date of search.*

We assigned his request the internal tracking number **NGC21-111.**  Please provide any possibly responsive records by **December 30, 2020.**   If you need more time, please let me know.

We interpret item #1 to be seeking any contacts you have had with Mr. Chelmowski as a FOIA requester, and item #2 to refer to your interaction with any other FOIA requesters from January 1, 2019 to today.

### General Information

For purposes of this request, you are required to conduct a search of your paper records and your electronic files stored in Google drive, other drives, or anywhere else available to you for any documents that may be responsive.  We also need you to search your emails (see below).

This search must also include text messages and any emails sent to or from non-NARA email and messaging accounts or non-NARA managed devices. If you have used non-NARA email or messaging accounts or devices to correspond about this matter, please make sure you have forwarded the records to your NARA work email address or device immediately if you have not already done so.

**Please provide a short description of how you conducted your search, including where you searched and all search terms used.**

**If your search does not locate any records, we also need a negative response.**

Please keep track of any searches which require more than 15 minutes. The total number of minutes (in excess of 15 minutes) spent on searches should be provided to NGC along with the responsive documents. (This information may be used by NGC to determine the amount of search fees that we may charge for operational records).

We need any potentially responsive records (other than emails) as separate PDF documents. Please put them in a Google Drive folder, share the folder with *foia@nara.gov*, and put the case number **NGC21-111** in the subject line of any email.

### How to provide responsive emails:

If you have ten or fewer emails, you may attach each one with any attachments as a separate PDF doc and email them to *foia@nara.gov*.  Please put the case number **NGC21-111** in the subject line of any email.

**IF you have more than ten emails,** NARA has new software, which will eliminate the often time consuming process of converting emails to PDFs one at a time. Using this new tool, you only have to create a label, conduct a search, and label the responsive emails. The attachments will automatically be included as well. Here are the steps:

1. Create a new label with the FOIA request's internal NGC tracking number. In this case, your label should be titled: **NGC21-111**. It is very important to create the label exactly as written – all one word, no spaces. You should **not** nest this label within another label.

2. Conduct a search for all responsive emails.

3. Select each responsive email by checking the box next to the email

4. Go to the label option at the top of the screen (it looks like a price tag), click the picture and a box will appear. Inside the box, locate the label titled **NGC21-111**. Check the label and the label will be automatically applied to the selected responsive emails. [See attached pdf image for reference]

5. Once you have applied the label to all responsive emails, please inform me so that we can coordinate with IT to export these responsive emails for review by NGC. Send an email to *foia@nara.gov* with the case number **NGC21-111** in the subject line, and state that you have finished labeling your emails.

Do not forward responsive email documents to our email address (we need them as stand-alone documents.)

Please label all applicable emails even if you believe they may duplicate those labeled by another employee.

If you have any questions, please don't hesitate to contact me.

Thank you very much for your help.

Sincerely,

Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



---

**2 attachments**

Chelmowski_Attach 1_FOIA Request NARA-NGC-2021-000212.pdf
411K

Creating A Label.pdf
64K

 **NATIONAL ARCHIVES**

**Susan Gillett <susan.gillett@nara.gov>**

---

## FOIA NGC21-336 (Chelmowski)
10 messages

**Susan Gillett** <susan.gillett@nara.gov>                              Fri, Mar 26, 2021 at 4:35 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached).  In his request he asks for:

   *1. All communications regarding James Chelmowski (Requester) including but not limited to all
   communications by all OGIS current and past employees (received or sent);*

   *2. All emails sent to OGIS@nara.gov;*

   *3. All OGIS submissions regarding James Chelmowski (he submitted or someone else submitted
   on his behalf as the FCC did this month) from January 1, 2018, to the later of the date of this
   search and March 9, 2021.*

We are doing ZL searches for #1 and #2.  We need you to conduct a search for possibly responsive
records for #3.  Please make your date of search *January 1, 2018 through March 26, 2021.*

We have assigned this request internal tracking number **NGC21-336**.  Please provide any possibly
responsive records by **April 5, 2021.**  If you need more time, please let me know.

Please note that he filed a duplicative subsequent request (NGC21-369) that requests two OGIS
mediation files 21-1395 (Chelmowski and FCC OGIS mediation) and 21-0310 (Chelmowski and EPA
OGIS mediation). These case numbers may assist you in your search.

**General Information**

For purposes of this request, you are required to conduct a search of your paper records and
your electronic files stored in Google drive, other drives, or anywhere else available to you for any
documents that may be responsive.

**Please provide a short description of how you conducted your search, including where you
searched and all search terms used.**

Please keep track of any searches that require more than 15 minutes. The total number of minutes
(in excess of 15 minutes) spent on searches should be provided to NGC along with the responsive
documents. (This information may be used by NGC to determine the amount of search fees that we
may charge for operational records).

We need each record as separate PDF documents. Please put them in a Google Drive folder, share
the folder with *foia@nara.gov*, and put the case number **NGC21-336** in the subject line of any email.

**If your search does not locate any records, we also need a negative response.**

If you have any questions, please do not hesitate to contact me.

Thank you very much for your help.

Sincerely,

Susan

Susan Gillett

Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



---

 **NGC21-336 Chelmowski_Attach 2_ Revised Records Descrip.pdf**
81K

---

**Jessica Hartman** <jessica.hartman@nara.gov>　　　　　　Mon, Apr 5, 2021 at 11:12 AM
To: Susan Gillett <susan.gillett@nara.gov>

Hi Susan,

I almost have this request ready for you.  Sheela is checking something for me, so I may not have the responsive records for you today.  Is Wednesday okay?

Thank you!
Jessie
[Quoted text hidden]

---

**Susan Gillett** <susan.gillett@nara.gov>　　　　　　Mon, Apr 5, 2021 at 11:39 AM
To: Jessica Hartman <jessica.hartman@nara.gov>

Hi Jessie,

Yes, Wednesday is fine.

He filed three more requests that I have attached below.  They may be duplicative of what you are already doing for NGC21-338 and NGC21-336.

NGC21-346 asks for the same records as NGC21-336 and NGC21-338, and only extends the search cutoff date to March 18, 2021.  I think the date of our search request (March 26, 2021) for these two earlier requests takes care of NGC21-346.  Let me know if I am wrong.

NGC21-369 asks for two mediation files by number:  21-1395 (FCC) and 21-0310 (EPA) and related OGIS communications.

NGC21-387 asks for OGIS mediation file 19-01001 (EPA).

Would these all be covered by what you are sending for NGC21-336 and NGC21-338?  See attached records descriptions.  If not, I can send you new search requests for all three.

Thanks,
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001

susan.gillett@nara.gov



[Quoted text hidden]

---

**3 attachments**

 **NGC21-346_Initial Request via FOIAonline 3.18.21.pdf**
91K

 **NGC21-369_Initial Request via FOIAonline 3.26.21.pdf**
2322K

 **NGC21-387_Initial Request via FOIAonline 4.1.21.pdf**
1685K

---

**Jessica Hartman** <jessica.hartman@nara.gov>       Mon, Apr 5, 2021 at 2:24 PM
To: Susan Gillett <susan.gillett@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Sheela Portonovo
<sheela.portonovo@nara.gov>

Hi Susan,

You are correct: the records that are responsive to NGC21-346, NGC21-369, and NGC21-387 are responsive under either
NGC21-336 and NGC21-338.

I hope this helps!
Thank you!
Jessie
[Quoted text hidden]

---

**Jessica Hartman** <jessica.hartman@nara.gov>       Wed, Apr 14, 2021 at 12:37 PM
To: Susan Gillett <susan.gillett@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>, Sheela Portonovo <sheela.portonovo@nara.gov>

Hi Susan,

I just shared with you the responsive records and our memo regarding the search for this FOIA request.  You will see
from the memo that some of the documents were corrupted and were difficult for me to duplicate/move/pull
down/upload.  I tried everything that I could think of, but it is outside my IT experience!

If you have any questions, please let me know!

Thank you!
Jessie

On Fri, Mar 26, 2021 at 4:35 PM Susan Gillett <susan.gillett@nara.gov> wrote:
[Quoted text hidden]

---

**Susan Gillett** <susan.gillett@nara.gov>       Thu, Apr 15, 2021 at 7:05 AM
To: Jessica Hartman <jessica.hartman@nara.gov>

Hi Jessie,

Are some of the documents unreadable?  If yes, NARA IT might be able to offer assistance.  Did you contact them?

Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



[Quoted text hidden]

---

**Jessica Hartman** <jessica.hartman@nara.gov>                              Thu, Apr 15, 2021 at 7:18 AM
To: Susan Gillett <susan.gillett@nara.gov>

Hi,

Because the documents were bulked, it was hard for me to tell which item it was causing the problem, or what the problem was (which was weird because all the files were duplicative of each other!).  If I was able to tell which document was troublesome, I tried to download it directly, and it seemed to work for me so I did not contact IT.  I just wanted to give you a heads up in case there were problems, especially since there were three files that it took hours to upload yesterday.

Thanks!
Jessie
[Quoted text hidden]

---

**Susan Gillett** <susan.gillett@nara.gov>                              Thu, Apr 15, 2021 at 7:47 AM
To: Jessica Hartman <jessica.hartman@nara.gov>

Hi,

We have had problems in our office when the name of the file is too long.  We have had to shorten the name to get it to unzip into a folder.  I can empathize.  Sometimes my colleagues don't comprehend how long some of the file transfers take.

I will take a look, and let you know if I have further questions.

Sincerely,
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



[Quoted text hidden]

---

**Jessica Hartman** <jessica.hartman@nara.gov>                    Thu, Apr 15, 2021 at 7:49 AM
To: Susan Gillett <susan.gillett@nara.gov>

Oh, wow!  It never occurred to me that the name of a file would cause it to get hung up!  Thanks for the tip, I will keep that in my back pocket!

[Quoted text hidden]

---

**Susan Gillett** <susan.gillett@nara.gov>                       Thu, Apr 15, 2021 at 7:55 AM
To: Jessica Hartman <jessica.hartman@nara.gov>

I think it may not like more than 28 characters.  You can play with the reduction, but try limiting the name to 28 or less.  Wanda Williams and Jodi Foor have both dealt with this issue, and are good resources.  We had an issue with FOIAonline where it does not like periods in file names (like dates).  We have to use underscore.

Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



[Quoted text hidden]



**Susan Gillett <susan.gillett@nara.gov>**

---

## FOIA NGC21-111 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                    Wed, Mar 24, 2021 at 5:24 PM
To: eDiscovery Requests <ediscovery.requests@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>

Good afternoon,

NGC requests that you pull emails labeled **NGC21-111** from the email address garym.stern@nara.gov .

When the results are available in Vault, please send an email to foia@nara.gov and put the case number in the subject line of the email.

Thank you for your help.

Sincerely,
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov





Susan Gillett <susan.gillett@nara.gov>

---

# FOIA NGC21-111 (Chelmowski)

**GaryM Stern** <garym.stern@nara.gov>                                    Wed, Mar 24, 2021 at 4:33 PM
To: Susan Gillett <susan.gillett@nara.gov>
Cc: Jeannette Wise <jeannette.wise@nara.gov>, Joseph Scanlon <joseph.scanlon@nara.gov>

Susan, I have labeled 26 emails between Chelmowski and me from 1/1/19 to the present, and attached is my FPL log for 2019-21, which should be responsive to the second part of his request.

Note, however, that I am not sure if we can release the names of the other requesters who sought me out.  While we do not withhold the names of FOIA requesters, I am wondering if it is a different standard when they seek out the FPL.  Jeannette, let me know what you think?

Sorry for the delay in responding.

Thanks,
Gary

Gary M. Stern
General Counsel
National Archives and Records Administration
8601 Adelphi Road
College Park, MD  20740
301-837-3026 (office)
301-837-0293 (fax)
garym.stern@nara.gov







[Quoted text hidden]

---

📄 **Public Liaison Tracker, GMS.2019-2021.xlsx**
13K



**NATIONAL ARCHIVES**

**Susan Gillett <susan.gillett@nara.gov>**

___

## FOIA NGC21-338 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>                                        Fri, Mar 26, 2021 at 4:57 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire
<carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received
from James Chelmowski (copy attached).  In his request he asks for:

> The OGIS log with all OGIS requests pursuant to FOIA from requests submitted to the OGIS
> from December 1, 2018, to March 11, 2021. It must include the data the OGIS keeps like case
> number, date of request, requester's names, agency names, case manager, date closed, status,
> [and] outcome.  The NARA has my permission to not redact my name James Chelmowski in
> these logs.

Please make your dates of search *December 1, 2018 through March 26, 2021.*

We have assigned this request an internal tracking number **NGC21-338**.  Please provide any possibly
responsive records by **April 7, 2021.**  If you need more time, please let me know.

**General Information**

For purposes of this request, you are required to conduct a search of your paper records and
your electronic files stored in Google drive, other drives, or anywhere else available to you for any
documents that may be responsive.

**Please provide a short description of how you conducted your search, including where you
searched and all search terms used.**

Please keep track of any searches that require more than 15 minutes. The total number of minutes
(in excess of 15 minutes) spent on searches should be provided to NGC along with the responsive
documents. (This information may be used by NGC to determine the amount of search fees that we
may charge for operational records.)

We need the records as separate PDF documents. [For example, if you have a separate log for each
fiscal year, make each year a separate PDF.] Please put them in a Google Drive folder, share the folder
with *foia@nara.gov*, and put the case number **NGC21-338** in the subject line of any email.

**If your search does not locate any records, we also need a negative response.**

If you have any questions, please do not hesitate to contact me.


Thank you very much for your help.


Sincerely,

Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



---

📕 **NGC21-338 Chelmowski Initial Request via FOIAonline 3.11.21.pdf**
66K



**Susan Gillett <susan.gillett@nara.gov>**

---

## FOIA NGC21-336 (Chelmowski)

---

**Jessica Hartman** <jessica.hartman@nara.gov>          Mon, Apr 5, 2021 at 2:24 PM
To: Susan Gillett <susan.gillett@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Sheela Portonovo
<sheela.portonovo@nara.gov>

Hi Susan,

You are correct: the records that are responsive to NGC21-346, NGC21-369, and NGC21-387 are responsive under either
NGC21-336 and NGC21-338.

I hope this helps!
Thank you!
Jessie
[Quoted text hidden]



Susan Gillett <susan.gillett@nara.gov>

---

## FOIA NGC21-336 (Chelmowski)

---

**Jessica Hartman** <jessica.hartman@nara.gov>                    Mon, Apr 5, 2021 at 2:24 PM
To: Susan Gillett <susan.gillett@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Sheela Portonovo
<sheela.portonovo@nara.gov>

Hi Susan,

You are correct: the records that are responsive to NGC21-346, NGC21-369, and NGC21-387 are responsive under either NGC21-336 and NGC21-338.

I hope this helps!
Thank you!
Jessie
[Quoted text hidden]

Case: 1:23-cv-14577 Document #: 1 Filed: 10/05/23 Page 55 of 120 PageID #:55

 **NATIONAL ARCHIVES**

Susan Gillett <susan.gillett@nara.gov>

---

# FOIA NGC21-336 (Chelmowski)
3 messages

---

**Susan Gillett** <susan.gillett@nara.gov>                       Thu, Aug 12, 2021 at 4:08 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Jodi Foor <jodi.foor@nara.gov>

Hi Jessie,

You sent us a Google folder for this case that has nine case folders and then a tenth folder called Carbon Copies.  What is Carbon Copies?  There are numerous PDFs in that folder.  Are these duplicates of what is in the other nine case folders?

Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov

 **NATIONAL ARCHIVES**

---

**Jessica Hartman** <jessica.hartman@nara.gov>                    Fri, Aug 13, 2021 at 8:00 AM
To: Susan Gillett <susan.gillett@nara.gov>

Hi!

For requesters who email us, but also include other agencies/offices or it's not clear if they are seeking OGIS's assistance (often people will include OGIS when submitting appeals, just to keep us "informed"), we put them in a separate "CC" folder.  Many of the emails that Mr. Chelmowski sent to OGIS also included other recipients and he didn't always specify what assistance he was seeking from OGIS, so we put them in the CC folder.  At one point, Mr. Chelmowski was emailing daily and including the same attachments.  I cannot guarantee that every single duplicative email and all attachments were placed in the CC folder (especially since there were many files that were corrupt when we received them), many of them were saved to the CC folder, and there are a fair amount of duplicate files.  However, I would imagine there may be one or two files would be unique; we tried to keep the name of the files in the CC folder the original file name from the requester.

I hope this helps!  Please let me know if there is anything else that isn't clear!
Thanks!
Jessie
[Quoted text hidden]

---

**Susan Gillett** <susan.gillett@nara.gov>                       Fri, Aug 13, 2021 at 8:14 AM
To: Jessica Hartman <jessica.hartman@nara.gov>

Thanks, Jessie.
Susan

Susan Gillett
Government Information Specialist
Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



[Quoted text hidden]



**Susan Gillett <susan.gillett@nara.gov>**

---

## FOIA NGC21-336 (Chelmowski)

**Susan Gillett** <susan.gillett@nara.gov>        Fri, Mar 26, 2021 at 4:35 PM
To: Jessica Hartman <jessica.hartman@nara.gov>
Cc: Martha Murphy <martha.murphy@nara.gov>, Alina Semo <alina.semo@nara.gov>, Carrie Mcguire <carrie.mcguire@nara.gov>
Bcc: FOIA <FOIA@nara.gov>

Hello Jessie,

I am contacting you because you may have records that are responsive to a FOIA request we received from James Chelmowski (copy attached). In his request he asks for:

> *1. All communications regarding James Chelmowski (Requester) including but not limited to all communications by all OGIS current and past employees (received or sent);*

> *2. All emails sent to OGIS@nara.gov;*

> *3. All OGIS submissions regarding James Chelmowski (he submitted or someone else submitted on his behalf as the FCC did this month) from January 1, 2018, to the later of the date of this search and March 9, 2021.*

We are doing ZL searches for #1 and #2. We need you to conduct a search for possibly responsive records for #3. Please make your date of search *January 1, 2018 through March 26, 2021.*

We have assigned this request internal tracking number **NGC21-336**. Please provide any possibly responsive records by **April 5, 2021.** If you need more time, please let me know.

Please note that he filed a duplicative subsequent request (NGC21-369) that requests two OGIS mediation files 21-1395 (Chelmowski and FCC OGIS mediation) and 21-0310 (Chelmowski and EPA OGIS mediation). These case numbers may assist you in your search.

**General Information**

For purposes of this request, you are required to conduct a search of your paper records and your electronic files stored in Google drive, other drives, or anywhere else available to you for any documents that may be responsive.

**Please provide a short description of how you conducted your search, including where you searched and all search terms used.**

Please keep track of any searches that require more than 15 minutes. The total number of minutes (in excess of 15 minutes) spent on searches should be provided to NGC along with the responsive documents. (This information may be used by NGC to determine the amount of search fees that we may charge for operational records).

We need each record as separate PDF documents. Please put them in a Google Drive folder, share the folder with *foia@nara.gov*, and put the case number **NGC21-336** in the subject line of any email.

**If your search does not locate any records, we also need a negative response.**

If you have any questions, please do not hesitate to contact me.

Thank you very much for your help.

Sincerely,

Susan

Susan Gillett
Government Information Specialist

Office of General Counsel
National Archives and Records Administration
College Park, MD 20740-6001
susan.gillett@nara.gov



---

📄 **NGC21-336 Chelmowski_Attach 2_ Revised Records Descrip.pdf**
81K

# Exhibit 2

NARA September 2, 2021 Privacy Act Response
First Ever NARA Privacy Act Response from Chelmowski
2017 to 2021 Privacy Act Requests



# NATIONAL ARCHIVES

September 2, 2021

James Chelmowski
6650 N. Northwest Hwy #300
Chicago, IL 60631

Re: Privacy Act NARA-NGC-2021-001286

Dear Mr. Chelmowski:

This is in response to your request of August 18, 2021 Privacy Act submission through FOIAonline. As has been explained to you in the past, FOIAonline is not the means by which the National Archives and Records Administration (NARA) receives Privacy Act submissions. However, our office has logged in your Privacy Act request with the above case number.

I am releasing to you pursuant to the Privacy Act all administrative records contained in: NGC21-024, NGC21-111, NGC21-156, NGC21-251, NGC21-336, NGC21-338, NGC21-346, NGC21-347, NGC21-352, NGC21-354, NGC21-369 and NGC21-387.

This completes the processing of this privacy Act request.

If you are not satisfied with our action on this request, you have the right to file an administrative appeal within ninety (90) calendar days from the date of this letter via regular U.S. mail or email. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision. If you submit your appeal in writing, please address it to the Deputy Archivist of the United States (ND), National Archives and Records Administration, 8601 Adelphi Road, College Park, Maryland 20740. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal." If you submit your appeal by e-mail please send it to *FOIA@nara.gov*, also addressed to the Deputy Archivist of the United States. Please be sure to explain why you believe this response does not meet the requirements of the Privacy Act. All correspondence should reference your case tracking number **NARA-NGC-2021-001286**.

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact our Senior Agency Official for Privacy (SAOP) Gary M. Stern for assistance at:

National Archives and Records Administration
8601 Adelphi Road, Room 3110
College Park, MD 20740-6001
301-837-1750
garym.stern@nara.gov

If you are unable to resolve your Privacy Act dispute through our SAOP, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal agencies. The contact information for OGIS is noted below:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road–OGIS
College Park, MD 20740-6001
ogis@nara.gov
ogis.archives.gov
202-741-5770
1-877-684-6448

Thank you for contacting the National Archives and Records Administration.

Sincerely,

*Joseph A. Scanlon*

Joseph A. Scanlon
FOIA & Privacy Act Officer
Office of General Counsel
Tel: 301-837-0583
Email: joseph.scanlon@nara.gov

# Exhibit 3

Chelmowski's February 21, 2023 FOIA and Privacy Act Request

## February 21, 2023 FOIA & Privacy Act Request

<u>Date of Request</u>: February 21, 2023
<u>FOIA and Privacy Act Requester</u>: James Chelmowski
<u>Date Scope</u>: Detailed Status of the Past-Due FOIA Requests filed by James Chelmowski between October 16, 2020, to September 6, 2022

**<u>FOIA and Privacy Request is for the following:</u>**

This is a FOIA and Privacy Act request for records regarding the requester James Chelmowski.

Provide all details of Everything done on these past-due Requests filed between October 16, 2020, and September 6, 2022, including everything in the Privacy Act System of Records NARA-7 FOIA Requests Files for these requests as of February 21, 2023. These responsive records will include everything in processing these requests including but limited to search requests, search details, search results, etc.

Chelmowski should not have to file this FOIA request to obtain the status of his FOIA requests because the NARA FOIA Public Liaison Gary Stern will not comply with his mandatory duties  FCC General Counsel and FOIA Public Liaison Gary Stern will not provide his mandatory and my rights to the status of my past due FOIA requests over the last month.  See the attached FOIA Public Liaison request.

NARA Privacy Act Officer Joseph Scanlon must provide all records in the NARA Privacy Act System of Records as of February 21, 2023, within 10 working days which is March 3, 2023, for my following requests including but limited to all search requests, all search details, all search results, etc

1) FOIA/PA submitted was on October 16, 2020, the NARA provided FOIA control number NARA-NGC-2021-000046, and the NARA provided a Privacy Act control number NARA-NGC-2021-000071.
2) FOIA submitted was on December 1, 2020, the NARA provided FOIA control number NARA-NGC-2021-000212.
3) FOIA/PA submitted was on December 21, 2020, the NARA provided FOIA control number NARA-NGC-2021-000282, and the NARA never provided a Privacy Act control number.
4) FOIA/PA submitted was on January 18, 2021, the NARA provided FOIA control number NARA-NGC-2021-000369, and the NARA never provided a Privacy Act control number.
5) FOIA/PA submitted was on February 2, 2021, the NARA provided FOIA control number NARA-NGC-2021-000433, and the NARA never provided a Privacy Act control number.
6) FOIA/PA submitted was on March 8, 2021, the NARA provided FOIA control number NARA-NGC-2021-000606, and the NARA never provided a Privacy Act control number.
7) FOIA submitted was on March 11, 2021, the NARA provided FOIA control number NARA-NGC-2021-000622.
8) FOIA/PA submitted was on March 18, 2020, the NARA provided FOIA control number NARA-NGC-2021-000644, and the NARA never provided a Privacy Act control number.
9) FOIA/PA submitted was on March 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-000647, and the NARA never provided a Privacy Act control number.
10) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000658, and the NARA never provided a Privacy Act control number.

11) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000660, and the NARA never provided a Privacy Act control number.

12) FOIA/PA submitted was on April 1, 2021, the NARA provided FOIA control number NARA-NGC-2021-000717, and the NARA never provided a Privacy Act control number.

13) FOIA/PA submitted was on August 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-001430, and the NARA provided a Privacy Act control number NARA-NGC-2021-001286.

14) FOIA submitted was on September 7, 2021, the NARA provided FOIA control number NARA-NGC-2021-001372.

15) FOIA/PA submitted was on June 7, 2022, the NARA provided FOIA control number NARA-NGC-2022-001280, and the NARA never provided a Privacy Act control number.

16) FOIA/PA submitted was on September 6, 2022, the NARA provided FOIA control number NARA-NGC-2022-001673, and the NARA never provided a Privacy Act control number.

# Exhibit 4

FOIA.gov Confirmation of Chelmowski's February 21, 2023 FOIA and Privacy Act Request


An official website of the United States government
Here's how you know


UNITED STATES DEPARTMENT *of* JUSTICE


FOIA.gov

MENU

Thank you for visiting FOIA.gov, the government's central website for FOIA. We'll continue to make improvements to the site and look forward to your input. Please submit feedback to National.FOIAPortal@usdoj.gov.

**Submission ID:** 588951

# Success!

## Your FOIA request has been created and is being sent to the Office of General Counsel.

You'll hear back from the agency confirming receipt in the coming weeks using the contact information you provided. If you have questions about your request, feel free to reach out to the agency FOIA personnel using the information provided below.

**Contact the agency**

Joseph Scanlon, FOIA Officer

301-837-3642

FOIA Requester Service Center

301-837-3642

Gary M. Stern, General Counsel, Chief FOIA Officer

301-837-1750

National Archives at College Park, Office of the General Counsel, Room 3110
8601 Adelphi Road
College Park, MD 20740

FOIA@nara.gov

---

# Request summary

Request submitted on **February 21, 2023**.

The confirmation ID for your request is **588951**.



> The confirmation ID is only for identifying your request on FOIA.gov and acts as a receipt to show that you submitted a request using FOIA.gov. This number does not replace the information you'll receive from the agency to track your request. In case there is an issue submitting your request to the agency you selected, you can use this number to help.

## Contact information

**Name**
James Chelmowski

**Mailing address**
705 W Central
Mt Prospect , IL 60056
United States

**Phone number**
847-768-0000

**Email**
jchelmowski@comcast.net

---

## Your request

February 21, 2023 FOIA & Privacy Act Request Date of Request: February 21, 2023 FOIA and Privacy Act Requester: James Chelmowski Date Scope: Detailed Status of the Past-Due FOIA Requests filed by James Chelmowski between October 16, 2020, to September

6, 2022 FOIA and Privacy Request is for the following: This is a FOIA and Privacy Act request for records regarding the requester James Chelmowski. Provide all details of Everything done on these past-due Requests filed between October 16, 2020, and September 6, 2022, including everything in the Privacy Act System of Records NARA-7 FOIA Requests Files for these requests as of February 21, 2023. These responsive records will include everything in processing these requests including but limited to search requests, search details, search results, etc. Chelmowski should not have to file this FOIA request to obtain the status of his FOIA requests because the NARA FOIA Public Liaison Gary Stern will not comply with his mandatory duties FCC General Counsel and FOIA Public Liaison Gary Stern will not provide his mandatory and my rights to the status of my past due FOIA requests over the last month. See the attached FOIA Public Liaison request. NARA Privacy Act Officer Joseph Scanlon must provide all records in the NARA Privacy Act System of Records as of February 21, 2023, within 10 working days which is March 3, 2023, for my following requests including but limited to all search requests, all search details, all search results, etc 1) FOIA/PA submitted was on October 16, 2020, the NARA provided FOIA control number NARA-NGC-2021-000046, and the NARA provided a Privacy Act control number NARA-NGC-2021-000071. 2) FOIA submitted was on December 1, 2020, the NARA provided FOIA control number NARA-NGC-2021-000212. 3) FOIA/PA submitted was on December 21, 2020, the NARA provided FOIA control number NARA-NGC-2021-000282, and the NARA never provided a Privacy Act control number. 4) FOIA/PA submitted was on January 18, 2021, the NARA provided FOIA control number NARA-NGC-2021-000369, and the NARA never provided a Privacy Act control number. 5) FOIA/PA submitted was on February 2, 2021, the NARA provided FOIA control number NARA-NGC-2021-000433, and the NARA never provided a Privacy Act control number. 6) FOIA/PA submitted was on March 8, 2021, the NARA provided FOIA control number NARA-NGC-2021-000606, and the NARA never provided a Privacy Act control number. 7) FOIA submitted was on March 11, 2021, the NARA provided FOIA control number NARA-NGC-2021-000622. 8) FOIA/PA submitted was on March 18, 2020, the NARA provided FOIA control number NARA-NGC-2021-000644, and the NARA never provided a Privacy Act control number. 9) FOIA/PA submitted was on March 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-000647, and the NARA never provided a Privacy Act control number. 10) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000658, and the NARA never provided a Privacy Act control number. 11) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000660, and the NARA never provided a Privacy Act control number. 12) FOIA/PA submitted was on April 1, 2021, the NARA provided FOIA control number NARA-NGC-2021-000717, and the NARA never provided a Privacy Act control number. 13) FOIA/PA submitted was on August 19, 2021, the NARA provided FOIA

control number NARA-NGC-2021-001430, and the NARA provided a Privacy Act control number NARA-NGC-2021-001286. 14) FOIA submitted was on September 7, 2021, the NARA provided FOIA control number NARA-NGC-2021-001372. 15) FOIA/PA submitted was on June 7, 2022, the NARA provided FOIA control number NARA-NGC-2022-001280, and the NARA never provided a Privacy Act control number. 16) FOIA/PA submitted was on September 6, 2022, the NARA provided FOIA control number NARA-NGC-2022-001673, and the NARA never provided a Privacy Act control number.

## Additional information

NARA FOIA and Privacy Act Request on February 21 2023 For Completed Details of Everything on Chelmowski Past Due Requests Under the FOIA.pdf

## Fees

**What type of requester are you?**
other

**Fee waiver**
no

**The amount of money you're willing to pay in fees, if any**
25.00

## Request expedited processing

**Expedited processing**
no





## CONTACT

Office of Information Policy (OIP)
U.S. Department of Justice
441 G St, NW, 6th Floor
Washington, DC 20530
E-mail: National.FOIAPortal@usdoj.gov

Hero image credit ↗ CC3.0

| FREQUENTLY ASKED QUESTIONS

| DEVELOPER RESOURCES

| AGENCY API SPEC

| FOIA CONTACT DOWNLOAD

| FOIA DATASET DOWNLOAD

| ACCESSIBILITY

| PRIVACY POLICY

| POLICIES & DISCLAIMERS

| JUSTICE.GOV

| USA.GOV ↗

# Exhibit 5

Chelmowski's February 21, 2023 Email Submission of his
FOIA and Privacy Act Request to NARA Privacy Act Email

**jchelmowski@comcast.net**

| | |
|---|---|
| **From:** | jchelmowski@comcast.net |
| **Sent:** | Tuesday, February 21, 2023 11:51 AM |
| **To:** | 'FOIA@nara.gov'; 'privacy@nara.gov'; 'joseph.scanlon@nara.gov' |
| **Cc:** | 'OIP.ComplianceInquiry (OIP)' |
| **Subject:** | FOIA and Privacy Act Requests for Everything Regarding the NARA Past Due FOIA Requests filed between October 16, 2020, and September 6, 2022 |
| **Attachments:** | NARA FOIA and Privacy Act Request on  February 21 2023 For Completed Details of Everything on Chelmowski Past Due Requests Under the FOIA.pdf; January 30 2023 NARA FOIA Public Liaison Service Request for Detailed Status Update for All My Past-Due FOIA Requests Filed After Joseph Scanlon October 8 2020 Declar (003).pdf; NARA FOIA and Privacy Act Confirmation FOIA.gov - Freedom of Information Act_ Create a request.pdf; Third Request for my Rights to January 30 2023 NARA FOIA Public Liaison Service Request for Detailed Status Update for All My Past-Due FOIA Requests Filed After Joseph Scanlon October 8 2020 Declaration.pdf |

| | |
|---|---|
| **Importance:** | High |

Dear NARA FOIA and Privacy Act Offices,

NARA Privacy Act Officer Joseph Scanlon's Privacy Act response is due in 10 workdays on March 3, 2023, with all the records as of February 21, 2023, in the Privacy Act System of Records NARA-7 FOIA Files for all my past due FOIA requests filed on October 16, 2020, to current.

Please confirm the following and attached February 21, 2023 FOIA and Privacy Act request submission with Expedited Process Requested.

You have confirmed my identity multiple times in the past.

Sincerely,

James Chelmowski

FOIA and Privacy Act requester

## February 21, 2023 FOIA & Privacy Act Request

Date of Request: February 21, 2023
FOIA and Privacy Act Requester: James Chelmowski
Date Scope: Detailed Status of the Past-Due FOIA Requests filed by James Chelmowski between October 16, 2020, to September 6, 2022

**FOIA and Privacy Request is for the following:**

This is a FOIA and Privacy Act request for records regarding the requester James Chelmowski.

Provide all details of Everything done on these past-due Requests filed between October 16, 2020, and September 6, 2022, including everything in the Privacy Act System of Records NARA-7 FOIA Requests Files for these requests as of February 21, 2023. These responsive records will include everything in processing these requests including but limited to search requests, search details, search results, etc.

Chelmowski should not have to file this FOIA request to obtain the status of his FOIA requests because the NARA FOIA Public Liaison Gary Stern will not comply with his mandatory duties  FCC General Counsel and FOIA Public Liaison Gary

Stern will not provide his mandatory and my rights to the status of my past due FOIA requests over the last month. See the attached FOIA Public Liaison request.

NARA Privacy Act Officer Joseph Scanlon must provide all records in the NARA Privacy Act System of Records as of February 21, 2023, within 10 working days which is March 3, 2023, for my following requests including but limited to all search requests, all search details, all search results, etc

1) FOIA/PA submitted was on October 16, 2020, the NARA provided FOIA control number NARA-NGC-2021-000046, and the NARA provided a Privacy Act control number NARA-NGC-2021-000071.
2) FOIA submitted was on December 1, 2020, the NARA provided FOIA control number NARA-NGC-2021-000212.
3) FOIA/PA submitted was on December 21, 2020, the NARA provided FOIA control number NARA-NGC-2021-000282, and the NARA never provided a Privacy Act control number.
4) FOIA/PA submitted was on January 18, 2021, the NARA provided FOIA control number NARA-NGC-2021-000369, and the NARA never provided a Privacy Act control number.
5) FOIA/PA submitted was on February 2, 2021, the NARA provided FOIA control number NARA-NGC-2021-000433, and the NARA never provided a Privacy Act control number.
6) FOIA/PA submitted was on March 8, 2021, the NARA provided FOIA control number NARA-NGC-2021-000606, and the NARA never provided a Privacy Act control number.
7) FOIA submitted was on March 11, 2021, the NARA provided FOIA control number NARA-NGC-2021-000622.
8) FOIA/PA submitted was on March 18, 2020, the NARA provided FOIA control number NARA-NGC-2021-000644, and the NARA never provided a Privacy Act control number.
9) FOIA/PA submitted was on March 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-000647, and the NARA never provided a Privacy Act control number.
10) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000658, and the NARA never provided a Privacy Act control number.
11) FOIA/PA submitted was on March 23, 2021, the NARA provided FOIA control number NARA-NGC-2021-000660, and the NARA never provided a Privacy Act control number.
12) FOIA/PA submitted was on April 1, 2021, the NARA provided FOIA control number NARA-NGC-2021-000717, and the NARA never provided a Privacy Act control number.
13) FOIA/PA submitted was on August 19, 2021, the NARA provided FOIA control number NARA-NGC-2021-001430, and the NARA provided a Privacy Act control number NARA-NGC-2021-001286.
14) FOIA submitted was on September 7, 2021, the NARA provided FOIA control number NARA-NGC-2021-001372.
15) FOIA/PA submitted was on June 7, 2022, the NARA provided FOIA control number NARA-NGC-2022-001280, and the NARA never provided a Privacy Act control number.
16) FOIA/PA submitted was on September 6, 2022, the NARA provided FOIA control number NARA-NGC-2022-001673, and the NARA never provided a Privacy Act control number.

# Exhibit 6

OGIS's Redacted Policies and Procedures





# Office of Government Information Services

*Standard Operating Procedures*

National Archives and Records Administration

*Revised July 2018*

OGIS STANDARD OPERATING PROCEDURES

# PROCESSES

## INTRODUCTION

This Standard Operating Procedures (SOPs) document is designed to guide Office of Government Information Services (OGIS) staff.

OGIS was created within the National Archives and Records Administration when the OPEN Government Act of 2007 amended the Freedom of Information Act (5 U.S.C. § 552). OGIS's key responsibilities include:

1. Reviewing compliance and policy.  Review policies and procedures of administrative agencies under the FOIA.  Review agency compliance with FOIA. Recommend policy changes to Congress and the President to improve the administration of FOIA.
2. Mediate disputes.  Offer mediation services to resolve disputes between persons making FOIA requests and agencies (non-exclusive alternative to litigation). May issue advisory opinions if mediation has not resolved the issue.
3. Serve as ombudsman. Solicit and receive comments and questions from Federal agencies and the public regarding the administration of FOIA to improve FOIA processes and facilitate communication between agencies and FOIA requesters.

In addition to these responsibilities, OGIS also provides dispute resolution training for the FOIA staff of Federal agencies, works closely with key FOIA stakeholders like the requester community and open government advocates, and more.

Individual staff members are assigned additional duties related to, but not limited to, training, records management, webpage management, blog posts, administration of the FOIA Advisory Committee, and proactive disclosure; this document will address some of these collateral duties.

## FEDERAL AUTHORITIES

- ❖ The Freedom of Information Act (FOIA), 5 U.S.C. § 552
- ❖ Administrative Dispute Resolution Act of 1996 (ADRA), 5 U.S.C. §§ 571-84
- ❖ Federal Advisory Committee Act (FACA), 5 U.S.C. §§1-16
- ❖ Administrative Procedure Act, 5 U.S.C. §§ 551-559
- ❖ Government Performance and Results Act (GPRA), 31 U.S.C. § 1115
- ❖ Privacy Act of 1974, U.S.C. 5 U.S.C. § 552a[1]

---

[1] OGIS is the FOIA Ombudsman and does not offer mediation services or compliance review regarding matters that relate solely to the Privacy Act. However, to the extent that FOIA and the Privacy

## OGIS STANDARD OPERATING PROCEDURES

(b) (5)



(b) (5)

## MEDIATION PROCESS



---

Act intersect in providing a right of access to Federal records, OGIS offers its mediation services and conducts compliance reviews concerning all FOIA procedural matters.

## OGIS STANDARD OPERATING PROCEDURES

### OGIS Mediation Process Flowchart
**See Appendix A**

### Weekly Basis
- Mediation team members/ Facilitators will manage a load of 20 complex cases. Mediation team members are expected to close two complex cases each week. As team members close complex cases, they will inform the mediation team lead so that she may assign new cases to maintain the case load.
- Mediation team members will assign themselves cases from the simple queue as their schedules allow. Team members should close five simple cases each week.
- Mediation team members should report on the status of their queues and closed cases weekly to the Deputy Director and the mediation team lead (noting any cases that are stuck) so that senior staff may make assignments or escalations as appropriate.
- Mediation Team Lead will quality control check cases on a weekly basis and make any noted changes

### Triage and Intake Duties

#### Processing Incoming Correspondence
- Each day the Staff Assistant will routinely check the OGIS inbox, incoming faxes and U.S. mail for new requests. The Assistant will print email messages and open mail and date stamp the letter requesting assistance received by OGIS (i.e., excluding background documents, solicitations, or personal mail). Facilitators will only access the OGIS inbox to respond to simple cases and to delete emails after ensuring all documents have been uploaded to the case management system.
- Staff Assistant will perfect requests for assistance that come in my phone by encouraging those who contact OGIS to submit their requests for assistance by email, mail or fax, explaining that our staff cannot discuss the specifics of a case until they have a chance to review correspondence.
- Staff Assistant will return phone messages as his/her schedule allows within 48 hours.
- Staff Assistant will search case management system to see whether the customer has previously contacted OGIS. If the customer's name is in case management system, the Staff Assistant confirms the contact information (updating as needed).



- Staff Assistant will file all that day's requests for assistance in a "To Be Reviewed" (purple) folder, for the following day's triage meeting.

## OGIS STANDARD OPERATING PROCEDURES



### Triage Meeting

Each day, Mediation team members and the staff assistant will meet to discuss the previous day's email, mail and fax submissions and will listen to any voicemails. At that meeting they will determine:

- *Complex cases* that are perfected and ready for assignment. Staff Assistant will acknowledge these cases (placing a copy of the acknowledgement letter in the case management system and a hard copy in the folder), enter them into case management system, create a folder, and put them in the complex assignment queue.



- *Simple cases (includes unperfected requests).* Staff Assistant will enter these into case management system and place them into the simple assignment queue. Staff assistant will highlight the row in red if the matter is time sensitive. Time sensitive requests include:
  - Congressional requests for assistance
  - Misdirected FOIA/PA requests/appeals - intended for other agencies
  - Misdirected FOIA/PA requests/appeals - intended for NARA - send to Joe Scanlon
  - Misdirected General (includes misdirected DOJ-361 forms/medical release forms, etc.)
  - Cases where we want to tell the customer to appeal/submit payment for fees, etc.
  - Situations where we need the customer's consent (we don't want those sitting around for weeks+ only to have to tell the customer that we need consent, let's get the consents so those cases are ready to work when they come up in the queue)
- *Complex calls* that may need to be handled by the person of the day.

# OGIS STANDARD OPERATING PROCEDURES

### Simple/ Unperfected Requests Cases



(b)(5)

- Staff Assistant will create a case in case management system.
- Staff Assistant will enter the simple case into the "Case Tracking Spreadsheet" hosted in Google Docs.
- Staff Assistant will upload the submission ((b) (5) ) into case management system in the documents section.
- The (b) (5) will delete the email from the org box after ensuring all materials are uploaded to case management system.

### Courtesy Copies/ Training Requests/ Complaints/ Other Emails

- During the triage meeting the meeting participants will determine which emails are cc's or otherwise not related to a case
- Meeting participants will convert the email to a PDF.
- The PDF will be saved in the OGIS shared drive (P:/08 Mediation/Case Materials/ OGIS Inbox Complaints/Copies/Training) in the folder of the month it was received and then deleted it from the inbox. (b) (5)
- Staff Assistant will delete the entire month of "cc" email folder 120 days (4 months) after it was received. (Ex. CC emails received during the month of August will be deleted January 1.)
- Inquiries regarding OGIS's compliance assessments will be forwarded to the Mediation Team lead who will work with the Compliance Team Leader to determine an appropriate response on a case-by-case basis. The response will be documented in OGIS case tracking system as part of our ombudsman function.
- Complaints about OGIS response delays should be saved in the "Triage" folder, in subfolder "Complaints." These complaints should be responded to within 24 hours if possible. See template language in standard language document.

### Complex- Mid Cases

- (b) (5)

- Staff Assistant will create a case folder in the case management system.
- Staff Assistant will pdf and upload the submission into the case folder.
- Staff Assistant will list the complex-mid case on the "Case Tracking Spreadsheet" hosted in Google Docs.

## OGIS STANDARD OPERATING PROCEDURES

- Staff Assistant will assign the case on the case tracking spreadsheet and alert the Designated Mediation Team member when the case is logged and ready to be acknowledged.
- Designated Mediation Team member will send an acknowledgement email/letter to the customer.
- Designated Mediation Team member will PDF the acknowledgement letter and save as "Case Number, Requester Last Name, Acknowledgement."
- Designated Mediation Team member will upload acknowledgement letter into case management system in the documents section.
- (b) (5)

### Complex Cases

- (b) (5)

- Staff Assistant will create a case in the case management system.
- Staff Assistant will list the complex case on the "Case Tracking Spreadsheet" hosted in Google Docs.
- Staff Assistant will send an acknowledgement email/letter to the customer.
- Staff Assistant will PDF the acknowledgement letter and save as "Case Number, Requester Last Name, Acknowledgement."
- Staff Assistant will upload the submission and acknowledgement letter into case management system in the documents section.
- (b) (5)

- The Mediation Team Lead will review the "Case Tracking Spreadsheet" and assign cases in case management system (after facilitators notify the team lead that their caseloads have dropped below 20 cases.)
- The Mediation Team Lead will enter initials of the assigned Facilitator into the spreadsheet.

## OGIS STANDARD OPERATING PROCEDURES



# OGIS STANDARD OPERATING PROCEDURES

## PROCESSING MEDIATION CASES

### 1. Simple Cases/ Unperfected Requests

- The Facilitator will assign themselves cases from the simple queue, pulling from the oldest cases.
- The Facilitator will respond to the customer by phone, email or U.S. mail.
- The Facilitator will PDF the email/mail and the response, and save as "Case Number, Requester Last Name, Type of Document."
- The Facilitator will upload the documents into the Case Management System and close the case.
- For cases that came in by email, the Facilitator will delete the email from the org box.
- The Facilitator will process simple cases on a first in, first out basis; an exception to this is when it appears a requester risks missing an appeal deadline. Any other cases that a Facilitator considers taking out of order should be discussed during triage.
- If the simple case requires communication with an agency or customer, the Facilitator will update the "Comments" section in the case management system as he/she works the case. Case notes will be updated immediately to reflect any phone calls or voicemails, and emails should be copied directly into the "Comments" section. If the facilitator receives an email attachment, it will be uploaded into the "Documents" section of the case management system.
- The Facilitator is expected to close at least five simple cases each week.

### 2. Complex- Mid Cases

The Mediation Team Leader assigns complex-mid cases to Mediation Team facilitators. Facilitators are responsible for ensuring that case management system information for their assigned cases is up-to-date and correct, including the "Public Status" (i.e. change from "pending assignment" to "In process") and "Comments."

#### A. Acknowledgment

- Send the customer a tailored acknowledgment email/letter, addressing the customer's current place in the FOIA process, how OGIS can assist, and the steps that the customer may wish to take in addition to requesting OGIS assistance. If the customer's submission is incomplete, request that the customer provide OGIS with the documentation we need to provide assistance.
- PDF signed letter or email and upload into case management system, label the correspondence (Case Number) (Last Name) Acknowledgement.
- Update the case management system with the "OGIS initial date of contact."

# OGIS STANDARD OPERATING PROCEDURES

- Send All acknowledgement correspondence within 10 days of receipt.

## B. Analysis
- Review all documents included in case file.
- Note the agency involved in the dispute; if it has not included OGIS in its SORN, obtained signed and dated consent form from the customer before contacting the agency.
- Designated Team Member will work with OGIS Deputy Director to call the agency or the customer to discuss the case and inform the customer how OGIS can assist.

## C. Correspondence/Review
- Case Facilitator and Deputy Director will determine what type of final response is necessary -- either a formal letter or email.
- Prepare final correspondence to memorialize the actions and outcomes of the case either in a letter or in an email.
- The closing letter should follow the closing letter template and may include language in the Standard Language Bank (P:/ 08 Mediation/ Standard Language, Templates and Contacts). Letter should include:
  - o Summary of customer's FOIA request history and chronology.
  - o Summary of customer's specific request to OGIS.
  - o Detailed explanation of the action that OGIS took in the case, including who OGIS spoke with at an agency.
  - o The final outcome of the case, including any agreements made by the requester and the agency.
- Facilitator sends draft final response correspondence to Mediation Team Lead for review.
- Mediation Team Lead alerts facilitator when letter is reviewed and has track changes.
- The Deputy Director reviews and returns the letter to the facilitator for edits/corrections.
- Facilitator sends letter to the agency for review and concurrence.
- At the discretion of the Deputy Director, deliver case to Director for review and signature.
- Save the final approved Word copy in the Chron File (P:/OGIS Case Management/ Complex-mid/Year/ Case Number) by "Case Number, Requester Last Name, Final Letter."

## OGIS STANDARD OPERATING PROCEDURES

### D.  Close Out

- Scan the letter, make a copy of the physical if sending letter via US mail (original for the customer, copy for the case file).
- Save the PDF as "Case Number, Requester Last Name, Final Letter."
- Mail or email the final letter to the customer.
- Upload the PDF to case management system, note in the comment section when the letter was mailed or emailed and cut and paste text from email as comment.
- Double check that all correspondence (email and U.S. mail) is saved in the case management system.
- Update fields in the case management system, particularly:
    - Case notes
    - Status
    - Date Closed
    - Queue noting if the case is Complex-Mid
    - Date of OGIS Initial contact date with customer
    - Public Case Details: detail the customer's requester, summary of OGIS's actions, and outcomes
    - Agency or agencies
    - Component(s)
    - Case type: delay, ombuds, etc.
- Close case.

## 3. Complex Cases

Facilitator ensures the case is assigned to him/her in case management system and that all information is up-to-date and correct, including the "Public Status" (i.e. change from "pending assignment" to "In process") and "Comments." Facilitators should also double check that all materials the customer submitted, the customer's acknowledgement letter/email, and privacy consent form (where necessary) are uploaded into the case management system, and that the date of initial contact reflects the date the acknowledgment letter was sent. If the Facilitator sees that the customer submitted any materials by email and/or that the Staff Assistant acknowledged the case by email, the Facilitator is responsible for deleting those materials from the OGIS inbox.

### E.  Acknowledgment

- Send the customer an introductory letter/email, following the opening letter template, and request any additional correspondence or information needed to work the case.
- PDF signed letter or email and upload into case management system, label the correspondence (Case Number) (Last Name) Facilitator Introduction
- All acknowledgement correspondence must be sent within 10 days of case assignment.

# OGIS STANDARD OPERATING PROCEDURES

### F. Analysis

- Review all documents included in case file.
- Note the agency involved in the dispute; if it has not included OGIS in its SORN, obtained signed and dated consent form from the customer before contacting the agency.
- For requester cases: Contact the agency to discuss the issues, consult the OGIS Contact List (P:/08 Mediation/ Standard Language, Templates and Contacts). Also, if new contact information is supplied, update spreadsheet.
- For agency cases: Contact the FOIA requester to discuss the issues
- Record all actions related to a case (phone calls, voicemail, etc.) in the case management system in the comments section, update comments as actions occur (on the day that they occur). Emails exchanged with the agency or the requester should be cut and pasted into the comments section; phone calls and voicemails should be summarized and include a list of participants. Each Facilitator should touch each case in his/her queue every week and then update the case notes after each action.
- In situations in which the facilitator has contacted the parties three times and has not received a satisfactory response, escalate the case the Deputy Director and cc the Mediation Team Lead, and note in the case comments.
- When issues have been resolved, or either party is not willing to change their position, double check that all correspondence is saved in the case management system. Print all email correspondence and place in paper case file.
- Alert the Attorney Advisor to any specific issues with this case, which may require legal analysis.

### G. Correspondence/Review

- Prepare final correspondence to memorialize the actions and outcomes of the case either in a formal letter or in an email.
- The closing letter should follow the closing letter template and may include language in the Standard Language Bank (P:/ 08 Mediation/ Standard Language, Templates and Contacts). Letter should include:
  - Summary of customer's FOIA request history and chronology.
  - Summary of customer's specific request to OGIS.
  - Detailed explanation of the action that OGIS took in the case, including who OGIS spoke with at an agency.
  - The final outcome of the case, including any agreements made by the requester and the agency.
- Mediation Team Lead alerts facilitator when letter is reviewed and has track changes.

# OGIS STANDARD OPERATING PROCEDURES

- In cases requiring legal review, the Attorney Advisor forwards the letter to the Deputy Director for final review.
- The Deputy Director reviews and returns the letter to the facilitator for edits/corrections.
- Facilitator sends letter to the agency for review and concurrence.
- At the discretion of the Deputy Director, deliver case to Director for review and signature.
- Save the final approved Word copy in the Chron File (P:/08 Mediation/ Case Materials/Chron) by "Case Number, Requester Last Name, Final Letter."

## H. Close Out

- Scan the letter, make a copy of the physical if sending letter via US mail (original for the customer, copy for the case file).
- Save the PDF as "Case Number, Requester Last Name, Final Letter."
- Mail or email the final letter to the customer.
- Upload the PDF to case management system, note in the comment section when the letter was mailed or emailed and cut and paste text from email as comment.
- Double check that all correspondence (email and U.S. mail) is saved in the case management system.
- Update fields in the case management system, particularly:
  - Case notes
  - Noting if the case is Complex
  - Initial contact date with requester
  - Public Case Details: detail the customer's requester, summary of OGIS's actions, and outcomes
  - Public Case Status: select the appropriate outcome for closure- admin closure, ombuds services provided, mediation services provided
  - Agency or agencies
  - Case type: delay, ombuds, etc.
- Close case.

## I. Quality Control Check

- At the end of the week a member of the mediation team will run a report of case closed (simple and complex) and give that report to the Mediation Team Lead.
- The Mediation Team Lead will check all the information in the case report for completion, paying particular attention to:
  - Noting if the case is Simple or Complex
  - Initial Date of Contact with Customer
  - Case Category

# OGIS STANDARD OPERATING PROCEDURES

- Exemptions
- FOIA Request Stage
- Estimated Date of Completion
- Public Status
- Public Case Details
- If edits are necessary, the Mediation Team Lead will open the case, update the necessary tabs, and close the case.

## J. Web Posting

- Using a copy of the final approved word document, add the symbol for electronic signature "/s/" and save a PDF to the Web Posting Folder (P:/08 Mediation/ Web Posting)
- Do not include simple case letters or emailed responses.
- Using Adobe, redact the following:
  - Requester's name and address
  - FOIA tracking numbers
  - Subject of the request
  - Dates of responses from agency
  - Any other identifying information
- Save redacted version to the Remediate Folder (P:/08 Mediation/ Web Posting/ Remediate)
- Facilitators specifically assigned to web posting will remediate documents for Section 508 review and post letters to the web. See appendix for specific web posting instructions "How to Add Final Letters to the Website."

*A Note about the Administrative Dispute Resolution Act (ADRA)*

OGIS's facilitation and mediation procedures, including its fact finding and ombuds services, fall under the purview of the ADRA. OGIS may protect any oral or written communication prepared for the purposes of dispute resolution proceedings. OGIS works to make the process as transparent by making as much purely factual information as possible available. However, OGIS will redact customer's names, address, and any identifying information, unless told otherwise, according to the ADRA.

# OGIS STANDARD OPERATING PROCEDURES



# COMPLIANCE PROCESS



# OGIS STANDARD OPERATING PROCEDURES

## Agency FOIA Program Compliance Assessment

The Freedom of Information Act (FOIA) mandates that the Office of Government Information Services (OGIS) review agency FOIA policies, procedures and compliance. See 5 U.S.C. §§ 552 (h)(2)(A) and 552 (h)(2)(B). The statute neither defines nor states how such review is to be carried out.

### A. Scheduling
- Mediation Team Lead and Compliance Team, at the end of the fiscal year, identify agencies (b) (5) to review the following fiscal year.[2]
- OGIS Director approves list of agencies for next fiscal year review.
- On or near the beginning of the fiscal year, OGIS publishes on its website a calendar of scheduled reviews.

### B. Initiate/Planning
- OGIS Director sends the head of the agency and FOIA leaders a letter announcing OGIS compliance assessment, what an OGIS assessment entails, and a tentative timetable for the review.
- Compliance Team with the assistance of OGIS administrative assistant contacts FOIA program offices within agencies to set up schedule for assessment.
- OGIS Directors and Compliance Team meet with agency FOIA leaders for an introductory meeting and presentation of a list of requested materials from the agency, to include materials listed below.
- Compliance Team sends Agency FOIA professionals online survey link (gets Union approval if necessary).
- Compliance Team lead contacts FOIA Program Head to request FOIA request and appeal logs for the most recent fiscal year with the following information:
  - FOIA Case Log
    - FOIA tracking number
    - Requester's name
    - Receive date
    - Request subject
    - Close date
    - Disposition description (denial + exemptions cited; total grant; no records, etc.)
    - Appeal information, if applicable
  - Standard Operating Procedures (SOPs), written policies, guidance, etc.
  - Organizational Charts
  - Strategic plans or other materials created under the Government Performance and Results Act and/or Backlog Reduction Plan (Open Gov. Initiative)
  - Training materials

---

[2] (b) (5)

## OGIS STANDARD OPERATING PROCEDURES

### C. Internal Review

- Compliance Team reviews the following and documents review in the Agency Pre-Review Comprehensive Spreadsheet:
    - FOIA Regulations
    - Internal Guidance for Processing Requests (if available)
    - OGIS report on mediation cases involving the agency
    - Agency FOIA Website
    - Annual FOIA and Chief FOIA Officer Reports
    - GAO & IG reports (if available)
    - Reports by nongovernmental organizations (NGOs) (if available)
- Attorney Advisor reviews and documents FOIA litigation against the agency for an agreed-upon time period, generally six years, and analyzes any trends in litigation.
- Compliance Team analyzes agency's FOIA Annual report for previous five years and fills out a FOIA Case Number Exemption Breakdown template.
- Using the FOIA Case Number Exemption Breakdown as a guide, the Compliance Team uses the FOIA logs submitted by the agency to choose a generalizable statistically significant sample to review.
- Review OGIS survey results.
- Review materials obtained from agency: Standard Operating Procedures (SOPs), written policies, guidance, etc.; organizational charts; strategic plans or other materials created under the Government Performance and Results Act; training materials.
-  Before on-site assessment, Compliance Team meets for pre-assessment review to share and document findings, discuss interview questions and discuss assessment logistics.
- If FOIA cases files involve classified records, Team Lead will work with the Security Office in NARA and in the agency being reviewed to share clearance information.

### D. On-site Review

- Conduct on-site interviews with FOIA staff (including but not limited to agency personnel overseeing FOIA program, FOIA Public Liaison, FOIA processors).
- Observe/shadow a FOIA processor (i.e. attend triage meetings, intake, processing of records, interaction with case management software, etc.).
- Review selected cases and compare against Element of an Effective FOIA Program. Document findings in Agency Review Case Notes.
    -  This can be done on-site (if paper or in proprietary system) or offsite (if agency can download case files to a disc or can give OGIS access to case management system).
    - If classified records need review, OGIS Team Lead and Deputy Director will review.
    - If paper documents, OGIS makes copies of examples.
- Conduct follow up interviews (if necessary), in person, by phone, or by email.

# OGIS STANDARD OPERATING PROCEDURES

**E.** (b) (5)



## F. Analysis and Writing

- Review the Agency Review Case Notes collected during case file review.
- Re-review Survey Results and compare with findings.
- Identify both areas for agency improvement, trends, and best practices, particularly with regard to policies and procedures; training; and supervision and management oversight.
- Draft report outline and share with OGIS Director and Deputy Director.
- Write Report using report template for Compliance Team Lead review and edits.
- Compliance Team Lead edits report

## G. Internal Report Review

- Compliance Team Lead sends draft report to OGIS Director, Deputy Director, and Attorney Advisor for comments and edits.
- Compliance Team, OGIS Director, Deputy Director, and Attorney Advisor meet to discuss edits and comments.
- Compliance Team follows up with agency re: questions for draft report compliance assessment.
- Compliance Team, OGIS Director, Deputy Director, and Attorney Advisor agree on draft.

## H. Reporting

- Compliance Team Lead sends draft to agency for review with Draft Report for Comment letter. (Agency has 20 working days to review).
- Compliance Team assesses agency's comments and edits and consults with OGIS Director, Deputy Director, and Attorney Advisor. If warranted, the Compliance Team

# OGIS STANDARD OPERATING PROCEDURES

will draft a letter from the Director to the agency documenting edits and the reasons for the edits.

- OGIS will correct any factual errors in the Draft Report.
- Compliance Team drafts blog post re: Final Report.
- Compliance Team Lead sends agency final report with OGIS Final Report Letter to Head of Agency.
- OGIS posts final report to website along announcement on blog and Twitter.

## I. Post Assessment Review

- Compliance Team follows up with the agency 120 days after issuance of final report to ask for documentation of changes.
- Team also creates a spreadsheet of the findings for posting on the OGIS website.

# OGIS STANDARD OPERATING PROCEDURES



## OGIS STANDARD OPERATING PROCEDURES

## PROGRAM MANAGEMENT



(b) (5)

## Legal

### Agency Regulation Review

- Attorney Advisor will work in conjunction with Compliance Team to review new and amended agency FOIA regulations and propose comments as needed. designee subscribes to the Federal Register for daily email alerts using the following key words: "Freedom of Information Act," "FOIA" and "Office of Government Information Services."

### Advisory Opinions

As directed by the Freedom of Information Act, 5 USC § 552 (h)(3), OGIS shall offer mediation services to resolve disputes between persons making requests under this section and administrative agencies as a non-exclusive alternative to litigation and, at the discretion of the Office, may issue advisory opinions if mediation has not resolved the dispute. OGIS has the authority to issue advisory opinions in response to a request from requester, an agency, or may decide on its own that such a matter warrants an advisory opinion.

Generally, advisory opinions serve as information and educational resources for both agencies and the public. Advisory opinions do not create new law, are exempt from the notice-and-comment rulemaking process, are not binding on either party, and receive less deference by courts than legislative rules. They remind parties of existing duties and serve to explain, restate, and/or clarify the meaning of existing law.

OGIS's advisory opinions are tailored to individual facts of a case and limited to explaining or clarifying the meaning of existing provisions within FOIA, while taking care not to create new interpretations or requirements within FOIA that could be interpreted as policy, or rulemaking. OGIS's opinions are posted on our webpage in order to provide guidance for agencies and help

## OGIS STANDARD OPERATING PROCEDURES

OGIS resolve similar disputes in the future. Prior to posting an advisory opinion, OGIS removes all information which would identify any person involved.

OGIS Advisory Opinions include:

- The facts as known to the agency
- Analysis of the issue(s)
- Conclusion
- Disclaimers of any binding legal effect of the opinion, with a statement that a formal opinion issued by OGIS could become part of administrative record in court proceedings
- Invitation to contact OGIS again if the facts change or if OGIS can be of any more assistance

# FOIA ADVISORY COMMITTEE

As part of the Open Government Partnership, the United States issued its second Open Government National Action Plan (NAP) on December 5, 2013, that sets forth several specific initiatives the Administration would undertake in the coming two years. One flagship initiative includes various efforts to modernize the Freedom of Information Act (FOIA), including creating a FOIA Federal Advisory Committee to be "comprised of government and non-governmental members of the FOIA community, to foster dialog between the Administration and the requester community, solicit public comments, and develop consensus recommendations for improving FOIA administration and proactive disclosures."

The Committee is established in accordance with the NAP and the directive in the Freedom of Information Act, 5 U.S.C. § 552(h)(1)(C), that the Office of Government Information Services (OGIS) "recommend policy changes … to improve" the Freedom of Information Act (FOIA) administration. The Committee is governed by the provisions of the Federal Advisory Committee Act, as amended, 5 U.S.C. App.

An OGIS staff member is the Designated Federal Officer for the FOIA Advisory Committee and provides such clerical, administrative, and logistical support as necessary for the Committee to effectively conduct its business. The DFO shall ensure the Committee complies with the requirements of the Open Government National Action Plan, the Committee Charter, relevant Federal regulations, and NARA's policies on committee management.

## A. Preparation for FACA Meetings

### Start of New Committee Term
- Set meeting dates and reserve McGowan Theater
  - Email conferenceroomreservations@nara.gov
    - The McGowan Theater is reserved for the entire 2016-2018 term.

# OGIS STANDARD OPERATING PROCEDURES

### *30-60 Days Prior to Meeting*

- o Reserve CART services (live type) prior to meetings held in McGowan Theater (30 days)
    - ▪ Email NARA Form 3081 to Interpreting@nara.gov
    - ▪ You cannot have live streaming on YouTube if you do not have CART services- this is VERY important
    - ▪ Once CART services are confirmed, send confirmation to Special Events.
- Create Eventbrite Event (www.eventbrite.com) for meeting so the public can register to attend and share information regarding the EventBrite registration with the public via the OGIS blog, the Committee's website, and the Federal Register, etc.
    - o User Name: ogis@nara.gov
    - o Password: Og12nra!
    - o Copy previous FACA event and update information- make sure to set the ticket sale times (both opening times and closing)
- Create Federal Register notice for publication (30 days prior to meeting)
    - o OGIS's Deputy Director Reviews
    - o Sent to the Committee Management Officer for Publication
      (b) (6)
- Contact Audio Transcription Center regarding price estimate for transcription services
    - o Email production@audiotranscriptioncenter.com to request services- cc OGIS Deputy Director and Staff Assistant.
    - o Once estimate is received forward to Staff Assistant for processing through Agency Services
- Complete NA-2025 form and submit it to NARA Photographic Services Staff (*if appropriate- generally first and last term meeting*)
- Send A/V requirements for the room to conferenceroomreservations@nara.gov (do not forget to ask that mics be turned off during breaks).

### *15-30 Days Prior to Meeting*

- Send Committee Members a Save the Date/ Reminder Email to determine who will attend the meeting in person, via teleconference and who cannot attend
- Ask Subcommittee co-chairs to submit materials for the meeting
    - o Post to Committee Webpage (as appropriate)
- Create Agenda
    - o Once Deputy Director Approves Agenda, post to committee webpage
- Create Talking Points for the Committee Chair

# OGIS STANDARD OPERATING PROCEDURES

- Create Talking Points for Archivist (if needed)
- Write an OGIS Blog Post regarding upcoming FOIA Advisory Committee Meeting

*7 Days Prior to Meeting*
- Send confirmation email to Special Events
    - Double check live stream/ teleconference/ audio visual requirements
    - Send room set up diagram
- Create seating chart and print name tents for Committee members
- Prepare Handouts for Committee Members
- Print agendas and other handouts for public
- Send list of attendees to Archives security (48 hours prior to meeting)
    - a1visitors@nara.gov Cc: conferenceroomreservations@nara.gov

## B. Day of Meeting Responsibilities
- Ensure that NARA Security have a print-out of the meeting attendees
- Check in with Special Events Staff and A/V staff

## C. Post- Meeting Responsibilities
- Ask Staff Assistant to request a new teleconference number.
- Record official meeting minutes, send meeting minutes to committee members for review- within 30 days
- Follow up with A/V staff to get video/audio and send media off to Audio Transcription Center for transcription
- Send links to videos to Social Media- socialmedia@nara.gov, have them:
    - Have video added to Advisory Committee Playlist
    - Align video to transcript (only needed when in Archivist Reception Room)
    - Make videos public/listed
- Follow up with NARA Photography Staff/Social Media team regarding any photography taken during the meeting to get copies of the photos/post photos to Flickr/update website – *if necessary.*
- Follow up with Members who were not able to attend the meeting
- Obtain transcription bill, send to OGIS's Staff Assistant
- Post on the committee website
    - Approved meeting minutes from previous meeting
    - Video links
    - Transcript
    - Presentations (if applicable)

## OGIS STANDARD OPERATING PROCEDURES

# STRATEGIC COMMUNICATIONS

Communications and outreach are key to OGIS's mission in changing the culture of FOIA. Strategic communications create a foundation for OGIS's long-term success by developing sustainable information vehicles, leveraging existing resources, and promoting the OGIS message to an ever-widening audience.

## Training

OGIS offers two modes of training, interagency Dispute Resolution Training and agency-specific training. Agency specific training is developed on an ad-hoc basis when an agency requests OGIS assistance with the development and delivery or training to its FOIA professionals. Past agency trainings have included topics such as dispute resolution and customer service.

## Dispute Resolution Training

The amended Freedom of Information Act (5 U.S.C. § 552) directs FOIA Public Liaisons to help resolve FOIA disputes. To that end, the Office of Government Information Services (OGIS) offers a free dispute resolution skills training program for all FOIA professionals. This training program is presented in collaboration with the Department of Justice's Office of Information Policy (OIP).

Training is held two times per year. Federal employees involved in any part of the FOIA process from any agency are encouraged to take the training. The size of the training class is limited to 25-28 people; this encourages participation and allows for small group work. OGIS maintains a spreadsheet of parties interested in training, some of the parties are OGIS mediation contacts, other have asked to be included on the training distribution list. Training documents are saved in OGIS:12 Training: Year: (Date) Dispute Resolution

- OGIS staff picks a date for training (usually in April and October to avoid potential weather situations)
- OGIS staff contacts NARA to book one of the big conference rooms in Archives I, this should be done 2-3 months in advance.
- OGIS staff creates an Eventbrite event and sends invitations and a training flyer to the OGIS training distribution list.
- OGIS publishes a post on the blog advertising the session.
- Once the training is capped at 28, OGIS staff submits the list of participants to NARA Archives I security.
- OGIS staff print out handouts for training:
  - Sign-in Sheet (1)
  - Copy of Attendee List for Security (1)
  - OMB Memo on Plain Writing (10)
  - Curiosity Map (30)
  - Effective Questions (30)
  - Paper Folding Activity Instructions (1)
  - "Let me Tell You How I Feel About" (30)
  - Reframing Exercise (30)

# OGIS STANDARD OPERATING PROCEDURES

- o Brainstorming Activity Instructions (1), Topics (1)
- o FOIA Dispute Resolution Shortcuts (30)
- o Role Play Trainer Instructions (1)
- o 4 Role Play Roles (7 sets- 4 different roles)
- o Survey (30)
- OGIS staff assists on day of training, leading participants to the conference room.
- OGIS staff (and guest lecturers) teach course.
- OGIS staff scan in survey results and save to the training folder.
- OGIS staff issue training certificates if requested later, via email.

## Social Media

OGIS uses social media as an outreach mechanism, to spark the conversation around FOIA, always with an emphasis on neutrality and impartiality that we use in our mediation and compliance work. OGIS uses social media tools per NARA Interim Guidance 831-2, Rules of Behavior for Using Web 2.0 and Social Media Web Sites and Responsibilities for Content Management.

## FOIA Ombudsman Blog

One OGIS staff member maintains the blog to ensure the message, writing style, and voice stays consistent. All OGIS staff members can submit ideas and draft blogs.

- Blog ideas are documented on the "Blog Ideas" word document, located on the OGIS Shared Drive within the Blog Folder.
- OGIS staff member drafts blog post and saves it by the blog post title in P:/ 06 Strategic Communications/ 6.2 FOIA Ombudsman Blog/ Blog Posts.
- In addition to drafting a blog post, the author must choose an image for the blog post from the National Archives Catalog, which are saved by the image number and a description of the image in P:/06 Strategic Communications/ 6.2 FOIA Ombudsman Blog/ Blog Images. Save the image as [description] [NARA identifier].
- OGIS Mediation and Compliance Team Leaders review the blog posts.
- Once approved OGIS staff prints the blog post and places it in the red review folder for the OGIS Director to review.
- OGIS Director approves the blog post.
- The OGIS staff member in charge of the blog post loads it into WordPress and publishes it on Wednesday of each week
- OGIS then tweets the blog post link via Twitter.

## Twitter

One OGIS staff member maintains the twitter account to ensure the message, writing style, and voice stays consistent. All OGIS staff members can submit ideas for tweets. All

## OGIS STANDARD OPERATING PROCEDURES

twitter related materials are saved on the shared drive (P: 06 Strategic Communications/ 6.3 Twitter).

**Tweeting Requirements**

As per NARA guidelines:
- OGIS will try to schedule about 1 tweet per day.
- OGIS will tweet links to content on our blog and website.
- OGIS will NOT tweet about reports, events, etc., by outside organizations or government entities.
- OGIS will not engage in discussions about FOIA policies on Twitter. If someone mentions OGIS in relation to a problem with a particular agency, we will ask them to contact us at ogis@nara.gov or via phone.
- Outside of Advisory Committee meetings, OGIS will not engage with Advisory Committee members on Twitter.

**Following Accounts**

Under NARA's guidelines, OGIS may "follow" certain types of other Twitter accounts, including those created and maintained by:

- NARA, including Presidential Library and Foundation accounts
- The Archivist of the United States
- The Foundation for the National Archives
- The Smithsonian Institution
- The Library of Congress
- Federal, state, county, city and international government entities and cultural institutions such as the White House, the U.S. Environmental Protection Agency and the British Library
- Non-profit cultural institutions such as museums, libraries, archives and historical societies and projects of these organizations.
  - For example, http://twitter.com/JQAdams_MHS is a project of the Massachusetts Historical society (http://www.masshist.org/adams/jqa.php)
- Non-profit professional organizations that are not political in nature and whose mission relates to NARA's mission, services or programs, such as Society of American Archivists, ARMA International or genealogical societies

As per NARA's guidelines, OGIS will not "follow" certain types of other Twitter accounts, including those created and maintained by:

- Commercial entities, such as companies or commercial websites, blogs, publications and periodicals
- Commercial entities that have a working relationship with NARA, such as consultants or contractors

# OGIS STANDARD OPERATING PROCEDURES

- Schools or universities, whether public or private (but their museums, libraries or archives may be followed)
- Individuals, regardless of whether they post in a personal or professional capacity
- Non-profit groups whose mission is unrelated to NARA's mission, services and programs
- Any group or individual that is engaged in political activity, as covered by the Hatch Act. The Hatch Act defines political activity as an activity directed toward the success or failure of a political party, a candidate for partisan political office, or a partisan political group.
- To avoid any sense of partiality, OGIS will not follow federal agency accounts.

## OGIS Website

The OGIS website is a valuable repository for documents and information. OGIS regularly adds content to the website, such as annual reports, testimony to Congress, agency compliance assessments, and final letters to customers (see Processing Mediation Cases, Web Posting). One OGIS staff member is responsible for uploading and maintaining content on the website. All website content is maintained on the OGIS shared drive (P:/ 06 Strategic Communications/ 6.5 OGIS Website). When uploading new content to the website, the OGIS staff member in charge of the website clears the content through either the Mediation Team Lead or the Compliance Team Lead for quality control.

## Stakeholder Engagement

### Brown Bags

- OGIS attends quarterly brown bags with civil society organizations hosted by OpenTheGovernment.org.

- About two months after each brown bag, the Outreach and Communications Manager reaches out to OpenTheGovernment.org to discuss dates for the next meeting and any potential agenda items.

- Outreach and Communications Manager schedules the meeting and alerts the Director and Deputy Director to the date and potential agenda items.

- The Director and Deputy Director determine who should attend the brown bag from OGIS staff.

- Outreach and Communications Manager prepares talking points on OGIS's ongoing initiatives and potential agenda items.

### Press Meetings

- Requests for interviews are forwarded to the Outreach and Communications Manager.

- The Outreach and Communications Manager contacts the reporter to schedule the interview and ask for a list of questions.

## OGIS STANDARD OPERATING PROCEDURES

- The Outreach and Communications Manager alerts NARA Public Affairs about the interview and prepares talking points.
- The Outreach and Communications Manager monitors media after the interview and sends NARA Public Affairs any resulting news stories.

# OGIS ANNUAL REPORT/RECOMMENDATIONS

OGIS reports annually to the President, Congress, and the public on the activities and accomplishments of the organization. OGIS regularly solicits and suggests improvements to FOIA through best practices, in the course of facilitating resolutions to FOIA disputes, in Dispute Resolution Skills Training for FOIA Professions, in posts on the OGIS blog, at requester and agency roundtable meetings, and through review of agency FOIA regulations, and through compliance assessments.

1.  **OGIS Annual Report to Congress**
    - OGIS staff creates new folder on P:/11 Reports/ OGIS Annual Report (year)- all yearly report documents are placed in that folder.
    - OGIS Mediation and Compliance Team Leads attend brainstorming meeting with Director and Deputy Director to develop ideas for the annual report.
    - Team Leads draft report outline/ table of contents along with a draft schedule for approval by Director/Deputy Director.
    - Draft schedule is created in consultation with NARA's Art Director/Printing Specialist in NARA's Creative Services Division.
    - By early January, Team Leads obtain OGIS accounting code and OGIS Director's signature on NARA Form 14122, Creative Services Request Form, for copy editing, layout and printing.
    - Schedule should establish publish date at least one week before Sunshine Week.
    - In October OGIS staff compiles previous fiscal year case data and create charts. Case data is run twice either by two staffers independent of one another or by a single staffer several weeks apart to ensure accuracy. See appendix D for instructions.
    - OGIS staff draft report and get consent from customers and agencies if using case studies.
    - OGIS staff choose images for the blog from the National Archives Catalog, which are saved by the image number and a description of the image.
    - OGIS Director and Deputy Director review the report no later than late November.
    - OGIS Director sends approved report to Director of Agency Services for Approval no later than the end of the first quarter of the fiscal year.

## OGIS STANDARD OPERATING PROCEDURES

- Director of Agency Services sends report to the Office of General Counsel, Congressional Affairs, Public Affairs, and the Archivist for Approval by early January.
- OGIS orders 250 hard copies and online page turn version.
- OGIS sends reports to Congress, Chief FOIA Officers, and stakeholders.
- OGIS writes and publishes blog about the report.
- OGIS tweets the blog.

2. OGIS Recommendations to Congress
- OGIS staff creates new folder on P:/03 Congressional Matters/ Recommendations to Congress/ (year)- all recommendation documents are placed in that folder.
- OGIS staff attends brainstorming meeting to develop ideas of the recommendations.
- OGIS staff draft outline in the form of previous recommendations: Issue, Challenge, Recommendations, and Action Steps.
- OGIS staff drafts recommendations.
- OGIS Director and Deputy Director reviews the recommendations.
- OGIS Director sends the recommendations to the Director of Agency Services and the General Counsel for approval.
- Director of Agency Services sends report to Director of Congressional and External Affairs.
- The Director of Congressional Affairs forwards the proposed recommendations to OMB for clearance.
- OGIS edits recommendations if requested by OMB review process.
- OGIS sends recommendations with letter to the Senate Committee on the Judiciary, Committee on Homeland Security and Government Affairs, and the House Committee on Oversight and Government Reform.
- OGIS writes blog about the recommendations.
- OGIS tweets the blog.


## CONGRESSIONAL TESTIMONY

In the event that the United States Congress requests the testimony of OGIS, the office completes the following steps, per NARA Directive Series 900 Admin 201, Relations with Congress, the Office of Management and Budget, and the General Accounting Office:

- OGIS receives request to testify.
- OGIS alerts the Director of Congressional and External Affairs.
- OGIS Director responds to the Chair of the Congressional Committee requesting testimony.

## OGIS STANDARD OPERATING PROCEDURES

- OGIS staffs drafts testimony.
- OGIS Deputy Director and Director reviews and approve the testimony.
- OGIS Director sends the testimony to Director of Agency Services for review.
- Once approved by Agency Services, OGIS Director submits testimony to the NSE.
- The NSE forwards the proposed testimony to OMB for clearance.
- OGIS edits testimony if requested by OMB review process.
- OGIS prepares and coordinates background briefing materials.
- OGIS Director delivers testimony.
- Committee sends OGIS questions for the record (QFRs).
- OGIS staff drafts response to QFRs.
- OGIS Deputy Director and Director review and approve the QFRs.
- OGIS Director sends the QFRs to Director of Agency Services for review.
- Once approved by Agency Services, OGIS Director submits QFRs to the NSE.
- The NSE forwards the answers to the QFRs to OMB for clearance.
- OGIS edits QFRs if requested by OMB review process.
- OGIS Director sends full testimony and answers to question for the record to the Congressional Committee for inclusion in the formal Committee record.
- OGIS posts written testimony and hearing web page or video (if available) on the OGIS webpage.
- OGIS writes blog about the testimony.
- OGIS tweets the blog.

### APPENDIX A – OGIS Mediation Process Flowchart
P:/ 19: Standard Language and Templates/OGIS.Mediation.Process.Flowchart.8.17.2017

### APPENDIX B – OGIS Google Group Inbox Courtesy Copy Instructions
P:/ 09 Policies and Procedures/ SOP/ OGIS Google Group Inbox Records CC Instructions

### APPENDIX C- How to Calculate the Number of Working Days Between Two Dates
P:/ 09 Policies and Procedures/ SOP/ How to Calculate the Number of Working Days



## How to Upload Final Response Letters to OGIS Website

1. Open Firebox web browser and log into the OGIS website at
   https://ogis.archives.gov/Page131.aspx

2. Hover over the **System tab** and choose **Digital Assets Manager**.



**Figure 1 - Web Site Home Page**

3. Click **Add Asset**.



**Figure 2 – Digital Assets Manager**

**4.** Check the **Active box** to make the asset available for use.

(b) (7)(E)



**Figure 3 – Add Asset Window**

**5.** Enter the digital asset's **Name.** The digital asset's name should be the same name as the PDF's file name without the file extension (ex. .pdf). Our file naming conventions are as follows: yyyy-mm-dd-final-letter-yyyyXXXXX

For example the name for a digital asset of a final response letter sent on March 30, 2015 for Case No. 201500237 would be: 2015-03-20-final-letter-201500237.

The name for a digital asset of a final response letter sent on March 16, 2015 for Case No. 201400828 would be 2015-03-16-final-letter-201400828

6. Enter a **Description** of the asset as shown in **Figure 3**.
7. If you plan on uploading multiple letters, click **Save As**. When you are done uploading letters, click **Save.** The screen will look like this:



**Figure 4 – Digital Assets Manager Screen**

8. Go to **My Site** > **OGIS**.  Navigate to **OGIS Final Response Letters to Customers** > **Recently Posted OGIS Final Response Letters** as shown in **Figure 5**.



**Figure 5 – OGIS Homepage**

9. On the **Recently Posted OGIS Final Response Letters** page, the letter are posted in the order of the letter date. For each letter you want link to on the **Recently Posted OGIS Final Response Letters** page, add in a new entry with the case number, letter date, and case description as show in Figure 6. The text for the "description" should come from the **Case Details** as entered in OAS.

> **HINTS**: Do not paste anything directly from Word. Copy and paste the **Case Details** from OAS or copy the case description from "Subject" Document Properties of the PDF file itself as shown in **Figure 7**.
>
> To add a break without creating a new paragraph, hold down the shift key while you hit enter.)

**Insert Digital Asset Button**

(b) (5)



**Figure 6 – Recently Posted OGIS Final Letters page**



**Figure 7 – Document Properties for a PDF of a Final Response Letter**

**10.** As shown in **Figure 6**, highlight OGIS case number for which you want to post a letter and click on the **Insert Digital Asset button**.

**11.** You will now see an **Insert Asset Window.** Click on the **Search tab** in the insert, enter the case number or letter date in the search field, and click the **Search button**.

(b) (7)(E)

**12.** Choose the correct file by click on the circle to the left of the appropriate file. Copy and paste the file "Description" into the Title Field at the lower left of the **Insert Asset Window** and then select **Open In New Window** as shown in Figure 9.

(b) (7)(E)



**Figure 9 – Insert Asset Window – Selecting and Describing a Letter**

**13.** Left click on the **Insert** button in the lower right hand corner of the **Insert Asset** window.

(b) (7)(E)



**Figure 10 – URL field for digital asset just added**

14. Left click on the digital asset link you just added and then left click on the **URL field**. With the right arrow key, move to the end of the **URL field** and and add **&method=1** and then left click on the **Save button**.



**Figure 11 – Add &method=1 to the end of the URL**

15. Once you have added digital asset links to all of the letters you wish to post, check to ensure that they all have &method=1 at the end of the URLs.

16. When you are ready for the letters you've posted to "go live," scroll down to the bottom of the page and change the "Updated" date to the appropriate date.

17. To publish the changes you made to the website, hit the **Emergency Publish** button as shown at the bottom of **Figure 11**.

18. Check the digital asset links in Chrome and Firefox to ensure that they work. If the a link does not work and you get a web page that displays gibberish, go back to ensure that you've added **&method=1** to the end of the URL for each digital asset link.

DRAFT
Note: Highlighted portions = aspects of the policy to be determined

**Records Management for OGIS Inbox emails on which OGIS is copied and/or Do not require a response**

(b) (5)

1. Go to the OGIS Inbox. Open an email and determine whether OGIS needs to respond to it. If we need to respond to the email, print it out and tag the email as "Printed." If OGIS was copied on the email and/or we do not need to reply to the email, go to #2. If you cannot tell or are unsure, check with a colleague.

**Note:** You can tell whether a customer sent an email to multiple parties by reviewing the top portion of the email; below the customer's name and/or email address, it will list the recipient(s) name(s) and or email address(es).

(b) (5)

2. After determining that an email does not require us to respond, save the email as PDF by left clicking on the **More Message Action** button (it looks like an a down-pointing arrow) on the right of the screen and select **Print** from the pull-down menu as shown below.

(b) (7)(E)

DRAFT
Note: Highlighted portions = aspects of the policy to be determined

3. A *Print Window* will appear. If the *Destination* is not **Save as PDF,** change it to Save as PDF, and click the **Save** button.



4. A *Save As* window will appear. Navigate to (b) (5)                          –
Copies, the location on the shared drive where we store emails to which we do not have to respond

DRAFT
Note: Highlighted portions = aspects of the policy to be determined

5. In the **Filename** field, enter the date on which the customer sent the email (yyyy-mm-dd) followed by a dash and leave the subject of the email as is (for example, **2015-09-14-Re_ FOIA-WEEK-38-2015-50_50 - Google Groups)** and click the **Save** button.

(b) (5)

(b) (7)(E)

DRAFT
Note: Highlighted portions = aspects of the policy to be determined

6. If the email has an attachments, left click on the blue **Download** link and select **Save Link As.**

(b) (7)(E)

DRAFT
Note: Highlighted portions = aspects of the policy to be determined

7. A *Save As* window will appear. Enter the date on which the customer sent the attachment (yyyy-mm-dd) followed by a dash leave the subject of the email as is (for example, 2015-08-18-UFO Documents) and click the **Save Button.**

(b) (5)

(b) (7)(E)



8. After saving the email and any attachments as PDFs, delete the email from the OGIS inbox.

9. Every day, the "person of the day" will review the X folder on the shared drive and delete the PDFs of any emails and attachments that are X days old or older.